UNITED STATES of America,
Plaintiff,

v.

**Andrew RED BIRD, Defendant.**

No. CR 01–30047.

United States District Court,
D. South Dakota,
Central Division.

July 5, 2001.

Jay P. Miller, U.S. Attorney's Office, Pierre, SD, for Plaintiff.

Edward G. Albright, Federal Public Defender's Office, Pierre, SD, for Defendant.

## ORDER

KORNMANN, District Judge.

[¶ 1] The defendant, Andrew Red Bird ("Red Bird"), filed a motion (Doc. 18) to suppress statements allegedly made jointly by Red Bird to an agent of the Federal Bureau of Investigation and a criminal investigator for the Rosebud Sioux Tribe; the motion raises a Sixth Amendment issue and a voluntariness issue. The same

motion seeks to suppress six buccal swabs and DNA evidence derived therefrom on a claim of "fruits of the poisonous tree." U.S. Magistrate Judge Moreno, after conducting an evidentiary hearing, filed and served a report and recommendation (Doc. 32) for disposition of Red Bird's motion. The Court has conducted a *de novo* review of the transcript of the evidentiary hearing (Doc. 28), the statements made by Judge Moreno and counsel for both parties in open court (Doc. 28), and all the files and records herein, including all the briefs and responses filed. Red Bird filed and served objections (Doc. 38) to the recommendations of the magistrate and the objections have been considered. The government filed and served objections (Doc. 52) to the magistrate's report and recommendations and such objections have also been considered. Defendant served and filed a response (Doc. 54) to the government's objections. The government, knowing this case had been set for trial with jury selection to begin on June 26, 2001, knowing that the Court was scheduled for various appearances at the annual meeting of the State Bar of South Dakota commencing on June 20, waited until the afternoon of June 20 (which it clearly had the legal right to do) to file objections to the report and recommendation issued by the magistrate on June 8. Red Bird had filed his objections on June 12. The government also filed on June 20 a motion for a continuance of the trial date (Doc. 53) and the defendant and his attorney have given notice of their objections to any such continuance. The defendant has been in custody awaiting trial. The Court had no choice but to grant the government's motion for a continuance.

[¶ 2] Red Bird was charged by way of written complaint on September 11, 2000, and was arrested on a tribal charge of rape. He appeared in tribal court for his arraignment, was represented by an attorney from the tribal public defenders' office, was formally advised of his rights, entered a plea of not guilty, and was released on bond. That attorney has continued to represent Red Bird in tribal court at all times material.

[¶ 3] F.B.I. Agent D. Joseph Weir ("Weir") and tribal investigator Grace Her Many Horses ("Her Many Horses") on November 28, 2000, sought out and approached Red Bird to question him about the alleged rape. It is undisputed that both the federal government and the tribe, two sovereigns, were cooperating in the investigation and charging of the defendant. The two sovereigns "worked in tandem" in connection with these charges. Red Bird told the agents that his lawyer had told him not to make a statement. He also told the agents that he had "nothing to hide." He also told them he would "make one statement and one statement only" and that Weir "would not get any more out of him." Despite this, the F.B.I. recitation in the F.B.I. form 302 as to the statements allegedly made by Red Bird covers seven pages. Although not in custody, Red Bird was given the *Miranda* warnings and signed a form to waive such rights. Her Many Horses knew that Red Bird was at that time represented by counsel and that he had appeared in tribal court on the same charge, forcible rape by penetration. Weir equivocated on the matter of his knowledge of the pending tribal charge and the fact that Red Bird was represented by counsel. He testified that he did not believe he had such knowledge but that he "didn't recall for certain." Despite this testimony, Weir had earlier reported in his 302 that Red Bird told him about instructions given to Red Bird by Red Bird's attorney. The magistrate was in error in finding that agent Weir "does not believe that he was apprised of" the defendant's tribal charge and the fact that the defendant had tribal counsel representing him; the objection of the defendant in that re-

gard should be sustained. It flies in the face of all common sense to believe that Her Many Horses and Weir were acting in concert looking for Red Bird to interview and that the two of them had not discussed the facts before interviewing Red Bird. They were traveling in the same vehicle to locate and approach Red Bird and then to follow him in one vehicle to conduct the interview at his home. It also makes no sense since both Weir and Her Many Horses had engaged previously in the same conduct that occurred here which conduct had been severely criticized by this court in *United States v. Swift Hawk*, 125 F.Supp.2d 384 (D.S.D.2000). The conduct of Weir and Her Many Horses in that earlier case had been described as "very troubling" and in violation of the Sixth Amendment rights of Swift Hawk. Both Weir and Her Many Horses would or should have had knowledge of such published opinion. I do not believe that agent Weir did not know the facts as to Red Bird. I believe he did know them and I reject his equivocal testimony. Regardless, the knowledge of Her Many Horses, acting in tandem and in concert with Weir, would be attributable to Weir.

■ [¶ 4] Weir and Her Many Horses, after excluding Red Bird's wife and their children, despite the wife's request to be present, took a statement from Red Bird without his attorney being present or even advised. This conduct is very troubling, as I observed in *Swift Hawk*. As I did in *Swift Hawk*, this Court takes judicial notice that, in civil cases, investigators and especially attorneys do not question a person they know to be represented by counsel without the attorney's consent and knowledge. Having practiced law for thirty years, primarily as a trial attorney representing a large number of insureds of insurance companies as well as plaintiffs, I know that all reputable insurance companies and adjusters in the United States have adopted this policy and have reduced it to writing. This is common knowledge among practicing attorneys and judges. It would be highly unethical for any attorney to talk to or even attempt to talk with another party whom the attorney knows is represented by counsel. It is simply not "fair play" to "go around" the attorney, even when the represented party agrees to talk without the presence of his attorney. Having said all this, I recognize that no Sixth Amendment right of the defendant can be based upon standards of the American Bar Association, including ABA Ann. Model Rule of Professional Conduct 4.2 (4th ed.1999), as explained by Chief Justice Rehnquist in *Texas v. Cobb*, —— U.S. ——, ——, 121 S.Ct. 1335, 1342 (footnote 2), 149 L.Ed.2d 321 (2001).

[¶ 5] Red Bird, unlike Swift Hawk, was told that he had the right to have an attorney present when he was being questioned. No permission to interview Red Bird was sought or received from the attorney known by Weir and Her Many Horses to be representing Red Bird. They knew or should have known the actual name and address of the attorney since the same attorney appears on a daily basis to represent each defendant in Rosebud Tribal Court. In this part of the world, everyone knows the business of others and there are few secrets. This is certainly true on the Rosebud Sioux Indian Reservation.

[¶ 6] The Sixth Amendment requires the suppression of any confession "which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." *Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 1202, 12 L.Ed.2d 246 (1964). In relying on *Massiah*, the United States Supreme Court has held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-

initiated interrogation is invalid." *Michigan v. Jackson,* 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986). Under the teaching of *Massiah* and *Jackson,* there is no doubt that the Sixth Amendment right to counsel attaches as to the government when a defendant is arraigned in federal or state court. The question here presented is whether it also attached under the circumstances here present when Red Bird was arraigned in the Rosebud Tribal Court.

■■ [¶ 7] There is, as a general proposition, no Sixth Amendment right to counsel in Indian Country as to tribal court matters. Such right is guaranteed by the Indian Civil Rights Act ("ICRA") (but only at the expense of the defendant). Congress, in adopting the ICRA, obviously made the decision that Native Americans would not necessarily be entitled to the same protections extended to every other American, namely the right to counsel in criminal cases in tribal courts, appointed at public expense, if necessary. In the absence of tribal funds being used, federal funds would have been required to accomplish that. The Tribal Constitution of the Rosebud Sioux Tribe guarantees certain rights to any Indian accused of a crime in that tribal court and this includes the right to be represented by an attorney. *See* Amendment XI as attached to the report and recommendation. The Rosebud Sioux Tribe, obviously determined to protect the rights of indigent Rosebud tribal members, had and has a public defenders' office to provide legal representation at the expense of the tribe. In that sense, the Rosebud Sioux Tribe is unusual in providing an attorney admitted to practice. Most tribes within the jurisdiction of the United States District Court for the District of South Dakota, Central and Northern Divisions, do not provide this right. Defendants in these other tribal courts are "represented" by an "advocate", a non-lawyer, and the Court takes judicial notice of that.

[¶ 8] There is almost no case law on the ICRA. The parties discuss *U.S. v. Percy,* 250 F.3d 720 (9th Cir.2001), a case decided after *Texas v. Cobb, supra.* Percy was interrogated by a federal agent after he had appeared in tribal court to be arraigned. Percy was not represented by counsel in tribal court. That tribal law did not require the appointment of counsel and Percy had not retained private counsel. *Percy* did not reach the question whether the Sixth Amendment right to counsel had attached and relied on *Patterson v. Illinois,* 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988). "In the present case, Percy had not retained counsel, nor did he indicate that he wanted the assistance of counsel. In such circumstances, *Patterson* holds that Percy could knowingly and intelligently waive his Sixth Amendment right to counsel. *Id.* at 290–93, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 ..." *Percy* at 726. The facts in the present case are entirely different when compared with the facts in *Percy.*

[¶ 9] The parties also discuss *U.S. v. Doherty,* 126 F.3d 769 (6th Cir.1997). *Doherty* was described in *Texas v. Cobb, supra,* as having been one of the cases from lower courts which erroneously read into the offense-specific definition in *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), an exception for crimes that are "factually related" to a charged offense. Nevertheless, the Court feels that some discussion of *Doherty* is warranted since *Doherty* dealt with a charge in tribal court followed by another charge in federal court. Doherty had made his first appearance in tribal court but the tribal court arraignment had been continued to allow time for him to employ an attorney. He had not actually spoken with any attorney and the record did not

reflect whether his mother had actually obtained an attorney when he was interviewed by the F.B.I. He, unlike Red Bird, had no "tribal right" to an attorney, whether appointed at public expense or not. Doherty was in custody and, before being interviewed, was given the standard "advice of rights form" to read and sign, this constituting the well-known *Miranda* warnings. He read and signed the form. The F.B.I. agent also explained to Doherty that, while he had no right to counsel in the tribal court, he had the right to have a lawyer appointed for him at government expense for the purposes of the interview. Doherty signed a waiver form indicating that he elected voluntarily to proceed with the interview. "Agent Kleinpaste informed Doherty at the beginning of the interview that he had the right to have an appointed attorney present during the interview, and asked him whether he had an attorney in the tribal court. Doherty responded that he did not, but that his mother was going to retain one. Agent Kleinpaste testified that Doherty understood that, while he did not have the right to an appointed attorney in tribal court, he did have such a right for the purposes of the interview." *Doherty* at 773.

[¶ 10] This Court respectfully disagrees with the statements in *Doherty* that tribal court proceedings are informal and not adversarial and that Congress did not wish to impose on such systems "an exclusionary rule that presumes the existence of an adversarial method of trying criminal cases." *Doherty* at 780. I have no information as to how a tribal court serving a total tribal membership of 300 people works in the upper peninsular of Michigan. I do have knowledge how tribal courts dealing with thousands of Native Americans work in South Dakota. In particular, I have knowledge and take judicial notice as to how the tribal court in Rosebud works. I am also aware that federal courts are obligated to extend re-

spect and act with principles of comity toward tribal courts. I decline to jump to the assumptions or conclusions advanced in *Doherty* that tribal courts, and by extension the tribal court on the Rosebud, operate as something of a family gathering and counseling session. The description of the tribal court in *Doherty* sounds, very frankly, like a description of "teen courts" now in vogue in various high schools. That is not the way the Rosebud Sioux Tribal Court works in South Dakota and it is clear that, at least in the present case, criminal adversarial judicial proceedings had been initiated. Red Bird, unlike Doherty, had more than "the mere existence of a statutory right to counsel ..." *Doherty* at 782. I also believe that the *Doherty* reliance on comparing tribal court proceedings to extradition proceedings is misplaced since " 'an extradition hearing has a modest function not involving the question of guilt or innocence.' *Judd v. Vose*, 813 F.2d 494, 497 (1st Cir. 1987)." Extradition proceedings are not akin to prosecutions in tribal courts in South Dakota, especially in Rosebud, and there is no evidence to even suggest that. Nor is there any evidence or argument to suggest that tribal court criminal prosecutions in South Dakota and particularly in Rosebud are not adversary proceedings. They are "adversary judicial criminal proceedings" as that phrase was used in *United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292, 2296, 81 L.Ed.2d 146 (1984). They are certainly adversarial in the eyes of the Rosebud Sioux Tribe or a public defender's office would not have been established and funded. While sentences resulting from tribal court convictions are not counted in computing the criminal history of a defendant who is later to be sentenced in federal court, they may be considered under U.S.S.G. § 4A1.3 (adequacy of criminal history category). *See* U.S.S.G. § 4A1.2 (i). The

government sometimes argues for an upward departure based upon a defendant's previous convictions or even charges pending in tribal court. Such convictions are certainly matters to be considered by the sentencing judge. *See* U.S.S.G. § 1B1.4 under which the judge "may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. *See* 18 U.S.C. § 3661."

■ [¶ 11] Without reference to the ICRA, the question is whether the *Massiah* exclusionary rule is triggered by a tribal constitution guaranteeing the right to counsel, the existence of a tribal public defender's program to provide counsel for indigents at tribal expense, and by the fact that Red Bird had actually been arraigned in a criminal adversarial proceeding in tribal court and had a lawyer appointed and acting for him, all before he was questioned in the absence of his attorney. I believe the answer, at least as to defendants who have appeared in tribal court in Rosebud, is in the affirmative.

[¶ 12] As Magistrate Moreno observed, the plain language of the Sixth Amendment prohibits the government from infringing upon a defendant's right to counsel "in *all* criminal prosecutions." I agree with his opinion that the "framer's use of the word 'all' is intended to include federal, state *and* tribal prosecutions." In the absence of Eighth Circuit precedent or United States Supreme Court precedent to the contrary, that same conclusion reached in *Swift Hawk* is the controlling precedent in this Court.

■■ [¶ 13] The Sixth Amendment does not apply of its own force to Indian tribes dealing with tribal legislation. *Talton v. Mayes*, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896) (although dealing with the question of whether cases in tribal court could be prosecuted without an indictment by a grand jury). It is clear as

well that there is no Fourteenth Amendment for Indian tribes. They did not participate in the Constitutional Convention and did not "sign on" by joining the federal union. We deal here, however, with the federal government prosecuting a Native American under federal laws, namely 18 U.S.C. §§ 1153 and 2246(2)(A), (B) and (C). ". . . Indians like other citizens are embraced within our Nation's 'great solicitude that its citizens be protected . . . from unwarranted intrusions on their personal liberty.' *Oliphant*, 435 U.S. at 210, 98 S.Ct. 1011, 55 L.Ed.2d 209." *Duro v. Reina*, 495 U.S. 676, 692, 110 S.Ct. 2053, 2063, 109 L.Ed.2d 693 (1990), abrogation on other grounds based upon legislation amending the ICRA recognized in *Mousseaux v. U.S. Com'r of Indian Affairs*, 806 F.Supp. 1433 (D.S.D.1992).

[¶ 14] As already discussed, Red Bird was charged by way of written complaint and arrested on a tribal charge of rape, a charge which has identical essential elements when compared with the later federal charges filed. The federal indictment does include four different types and charges of forcible rape by penetration but whatever sexual activity occurred between Red Bird and the alleged victim on September 10, 2000, is the basis for charges in both courts. They are more than "inextricably intertwined." They are identical. The United States Supreme Court held in *McNeil v. Wisconsin*, that the Sixth Amendment right to counsel is offense specific. 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991). The government argues that the charged offense in tribal court and the matter that Agent Weir was investigating are not the same because the elements differ somewhat between the tribal court charge and the federal indictment. The government relies upon the United States Supreme Court's opinion in *Texas v. Cobb, supra*. The issue in *Texas v. Cobb* was the definition of the

term "offense" in the context of *McNeil*. The majority in *Texas v. Cobb* announced that the Sixth Amendment right to counsel encompasses "offenses that, even if not formally charged, would be considered the same offense under the *Blockburger* test." *Texas v. Cobb,* —— U.S. at ——, 121 S.Ct. at 1343. The United States Supreme Court held in *Blockburger v. United States* that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Thus, although Cobb had been charged with burglary (and thus his Sixth Amendment right to counsel had attached), the police were not precluded from the uncounseled interrogation of Cobb about two murders committed in connection with the burglary.

[¶ 15] At first glance, *Texas v. Cobb* may appear to be quite broad in providing guidance and directions to the lower courts. Indeed, the dissent complained that the majority opinion would significantly diminish the Sixth Amendment's protections.

> That is because criminal codes are lengthy and highly detailed, often proliferating "overlapping and related statutory offenses" to the point where prosecutors can easily "spin out a startlingly numerous series of offenses from a single ... criminal transaction." *Ashe v. Swenson,* 397 U.S. 436, 445, n. 10, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Thus, an armed robber who reaches across a store counter, grabs the cashier, and demands "your money or your life," may through that single instance of conduct have committed several "offenses," in the majority's sense of the term, including armed robbery, assault, battery, trespass, use of a firearm to commit a felony, and perhaps possession of a firearm by a felon, as well. A person who is using and selling drugs on a single occasion might be guilty of possessing various drugs, conspiring to sell drugs, being under the influence of illegal drugs, possessing drug paraphernalia, possessing a gun in relation to the drug sale, and, depending upon circumstances, violating various gun laws as well. A protester blocking an entrance to a federal building might also be trespassing, failing to disperse, unlawfully assembling, and obstructing Government administration all at one and the same time.

The majority's rule permits law enforcement officials to question those charged with a crime without first approaching counsel, through the simple device of asking questions about any other related crime not actually charged in the indictment. Thus, the police could ask the individual charged with robbery about, say, the assault of the cashier not yet charged, or about any other uncharged offense (unless under *Blockburger's* definition it counts as the "same crime"), all without notifying counsel. Indeed, the majority's rule would permit law enforcement officials to question anyone charged with any crime in any one of the examples just given about his or her conduct on the single relevant occasion without notifying counsel unless the prosecutor has charged every possible crime arising out of that same brief course of conduct. What Sixth Amendment sense—what common sense—does such a rule make? What is left of the "communicate through counsel" rule? The majority's approach is inconsistent with any common understanding of the scope of counsel's representation. It will undermine the lawyer's role as "medium" between the defendant and the government. *Maine v. Moulton, supra,* at 176, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481. And it will, on a random

basis, remove a significant portion of the protection that this Court has found inherent in the Sixth Amendment.

*Texas v. Cobb,* —— U.S. at ——, 121 S.Ct. at 1348 (Bryer, J., dissenting). The majority responded to the foregoing prediction by pointing out that "in all but the rarest of cases, the Court's decision today will have no impact whatsoever upon a defendant's ability to protect his Sixth Amendment right," because "defendants retain the ability under *Miranda* to refuse any police questioning . . . ." *Id.* at ——, n. 2, 121 S.Ct. at 1343, n. 2. We must remember, however, that the Supreme Court did not decide whether Cobb had "made a unilateral waiver" of the Sixth Amendment right to counsel. In other words, since Cobb had no Sixth Amendment right he had nothing to waive.

[¶ 16] *Texas v. Cobb,* although instructive, is not squarely on point. The crimes of burglary and murder are clearly distinct. That is not the case here where the defendant was charged in tribal court with forced sexual penetration and was being investigated by the F.B.I. about the same instance of forced sexual penetration with the same victim at the same location and at the same time. Indeed, the Supreme Court in *Texas v. Cobb* warned against "inferences from opinions which did not address the question at issue." *Texas v. Cobb,* —— U.S. at ——, 121 S.Ct. at 1341. *Texas v. Cobb* is not to be read as the government here contends. "Although it is clear that the Sixth Amendment right to counsel attaches only to charged offenses, we have recognized in other contexts that the definition of an 'offense' is not necessarily limited to the four corners of a charging instrument." *Id.* at 1343. The fact that the government must prove in an offense of this kind in federal court that the offense occurred in Indian Country and that the defendant is an "Indian" will not destroy the Sixth Amendment right to counsel under the facts of this case. Obvi-

ously, prosecuting an offense in tribal court, state court or federal court will always involve slight differences to establish jurisdiction but if the exact nature of the offense remains the same, the *Blockburger* test is met. The holding in the present case meets the tests of *Texas v. Cobb* as well as of *Blockburger.*

[¶ 17] The "Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State." *Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 479, 88 L.Ed.2d 481 (1985).

> Indeed, after a formal accusation has been made—and a person who had previously been just a "suspect" has become an "accused" within the meaning of the Sixth Amendment—the constitutional right to the assistance of counsel is of such importance that the police may no longer employ techniques for eliciting information from an uncounseled defendant that might have been entirely proper at an earlier stage of their investigation.

*Michigan v. Jackson,* 475 U.S. 625, 632, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986). A written waiver is insufficient to justify police-initiated interrogations after the Sixth Amendment right to counsel has attached. *Michigan v. Jackson,* 475 U.S. at 635, 106 S.Ct. at 1410–11. Any waiver after police-initiated interrogation is invalid once the Sixth Amendment privilege attaches. *Id.* at 636, 106 S.Ct. at 1411. The fact that Red Bird signed a *Miranda* waiver is irrelevant under the facts of this case.

[¶ 18] It is difficult to understand why a few law enforcement officers cannot or will not follow proper procedures. Sexual assaults are very serious problems everywhere. They are even more of a problem on Rosebud. The end, however, does not

justify the means and it should not be difficult for law enforcement officers to learn what rights American citizens have and to respect those rights. As already stated, Weir and Her Many Horses were the very officers involved in *Swift Hawk.* They knew very well that they should not repeat their *Swift Hawk* course of conduct. The prosecutor and the defense attorney are the same in both cases. The prosecutor is "far afield" in arguing that the holding in *Swift Hawk* dealing with Sixth Amendment rights was dicta. If the United States Attorney's office was so advising law enforcement officers, they were also "far afield." If the prosecutor in this case was in doubt, a clarification should have been sought and none was sought. It is once again highly improper conduct on the part of Weir and Her Many Horses to again attempt an "end run" around an appointed and acting attorney, paying no attention to a previous decision by this Court. Agents of the Federal Bureau of Investigation and federal prosecutors should comply with both the letter and the spirit of the law. The decision in *Swift Hawk* was and is the law in the Northern and Central Divisions of the District of South Dakota, until and unless overturned by a higher court. The argument that the government in the Northern and Central Divisions of the District of South Dakota should follow the panel decision from the Sixth Circuit rather than *Swift Hawk* is ludicrous. In addition, the government well knew of the many factual distinctions between *Doherty* and *Swift Hawk.* Weir and Her Many Horses also knew full well, from their own personal knowledge as well as from what was set forth in *Swift Hawk,* how things are entirely different in Rosebud as compared with a tribal court in Michigan serving 300 people.

[¶ 19] Red Bird also seeks to suppress his statements on the claim they were involuntary. The magistrate made no findings in this regard but concluded that defendant's statements were not the product of coercion or otherwise involuntary. The defendant objects to this conclusion. The Court has conducted a *de novo* review of the record and will make its own findings and conclusions.

[¶ 20] The Fifth Amendment guarantees that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." The United States Supreme Court recognized the right to counsel during custodial interrogation as a procedural safeguard to the substantive Fifth Amendment right in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Warren v. City of Lincoln, Neb.,* 864 F.2d 1436, 1441 (8th Cir.1989). *Miranda* concluded that the right to counsel during custodial police interrogation is necessary because such interrogation "contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. at 467, 86 S.Ct. at 1624. The Supreme Court announced in *Edwards v. Arizona* that "an accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). Red Bird initiated nothing as to talking with Weir and Her Many Horses.

[¶ 21] Red Bird was not in custody at the time he made incriminating statements to Weir and Her Many Horses. Thus, *Miranda* and *Edwards* are not controlling. However, they nonetheless stand for the proposition that, under the Fifth Amendment, an accused may not be compelled to waive his right not to incriminate himself.

[¶ 22] The statements were coerced if one were to believe the testimony of Red Bird. The testimony was that Weir in private told Red Bird before the interview began that, if Red Bird did not talk to them, they would arrest him and take him to jail to talk there. Weir denied this and the magistrate found that the testimony of Weir was more credible than that of Red Bird. Red Bird also told Weir that he had an attorney and was told not to talk to anyone. It is troubling that the agents isolated Red Bird from his wife who desired to be present for the interview. Isolating a criminal suspect from family and friends who desire to be present to lend moral support during the questioning and to possibly deter a suspect from incriminating himself is one factor suggesting coercion. *United States v. Griffin*, 922 F.2d 1343, 1352 (8th Cir.1990). This is especially the case when Red Bird's wife could have listened to what was being said and the agent did not tape record or otherwise record the statements, leaving judges again to choose between different versions of what was said and what was not said. At least, in *Swift Hawk*, Weir did tape record the statement. The magistrate heard the testimony and observed the witnesses. The objections by Red Bird dealing with the issue of a coerced confession should be overruled and the report and recommendation in that regard should be adopted.

[¶ 23] All of the foregoing aside, the Court, at the trial of this matter, would almost certainly not permit the F.B.I. interview and confession or statement to go to the jury. It would in all likelihood be excluded under Fed.R.Evid. § 403. Some portions of it have no relevance. This includes what some other F.B.I. agent allegedly did in some other case. The probative value of the statement would very likely be substantially outweighed by the danger of unfair prejudice, given all that has occurred in this case. It remains to be seen whether Red Bird will testify at trial. If he does, *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), may permit the use of the statement; the Court will answer that question at that time.

[¶ 24] The magistrate would have recommended the suppression of the buccal swabs and DNA findings as "fruits of the poisonous tree" but did not do so since such evidence would have inevitably been discovered by lawful means without reference to the Sixth Amendment violation. He relied on *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984), and *United States v. Reinholz*, 245 F.3d 765, 779 (8th Cir.2001). This court agrees with the legal analysis of the magistrate. The cases on which he relied provide support for his recommendation. If the government had requested a search warrant for the taking of blood or tissue specimens from Red Bird for the purpose of a DNA analysis, the warrant would have been issued. This evidence should not be suppressed and the objections of Red Bird in that regard should be denied.

[¶ 25] The recommendation and report (with the exception of what agent Weir knew) as to the joint statements to the F.B.I. agent and the tribal investigator should be adopted and the motion to suppress granted. All other objections should be overruled, the motions denied and the report and recommendation accepted. The objections of the government should be denied.

[¶ 26] Now, therefore,

[¶ 27] IT IS ORDERED, as follows:

1) The motion to suppress certain statements (Doc. 18) is granted as to the statements to the F.B.I. agent and the tribal criminal investigator.

2) The motion to suppress six buccal swabs and the DNA evidence derived therefrom (Doc. 18) is denied.

3) The objections of Red Bird (Doc. 38) to the report and recommendation are overruled as to the issue of voluntariness.

4) The objections of the government (Doc. 52) are overruled.

5) The report and recommendation of the magistrate judge (Doc.32) is adopted with the sole exception that the court finds that the report and recommendation is in error in concluding or finding that agent Weir did not know that the defendant had previously appeared at an arraignment in tribal court, that counsel had been appointed for him, and that such attorney was the attorney for the defendant at that time, this court now determining that agent Weir knew all such matters. The objection of Red Bird in that regard (Doc. 38) is sustained.

## REPORT AND RECOMMENDATION FOR DISPOSITION OF DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE

MORENO, United States Magistrate Judge.

### I.

Defendant, Andrew Red Bird (Red Bird), filed a Motion to Suppress Statements and Evidence and supporting Memorandum on May 15, 2001. Docket Nos. 18–19. A hearing was later held on the Motion on May 29, 2001 at which three witnesses testified and three exhibits were received into evidence. Docket Nos. 26, 28. Because Red Bird's Motion is a dispositive one, this Court is only authorized to determine the same on a report and recommendation basis. Pursuant to 28 U.S.C. § 636(b)(1), the Court does now make and propose the following report and recommendation for disposition of Red Bird's Motion.

### II.

Red Bird, whose date of birth is June 28, 1958, is charged with four counts of aggravated sexual abuse in violation of 18 U.S.C. §§ 1153 and 2246(2)(A), (B) and (C). The indictment alleges that Red Bird sexually abused Valencia Bone Shirt, aka Valencia Four Horns, on or about September 10, 2000 on the Rosebud Indian Reservation in South Dakota. Red Bird has pled not guilty to all four counts of the indictment and is currently detained pending trial.

In his Suppression Motion, Red Bird seeks to suppress any and all statements he made to F.B.I. Agent D. Joseph Weir and Rosebud Sioux Tribal Criminal Investigator Grace Her Many Horses on Sixth Amendment and voluntariness grounds. He also moves to suppress six buccal swabs and DNA evidence derived therefrom as "fruits of the poisonous tree". Plaintiff, United States of America (government) asserts that Red Bird's Sixth Amendment rights were not violated and that statements to Weir and Her Many Horses were voluntary and not coerced. The government also argues that the swabbings and DNA evidence were not the "fruit" of an illegal interview, were not testimonial in nature and would have been inevitably discovered.

At the conclusion of the May 29th hearing, the Court took the matter under advisement. After careful study of the facts and circumstances present and relevant precedent, the Court concludes that Red Bird's Motion should be granted in part and denied in part, as explained in more detail below.

### III.

On September 11, 2000, Red Bird was charged by criminal complaint in Rosebud Sioux Tribal Court with the offense of rape. The complaint alleges that on Sep-

tember 10, 2000 near Spring Creek, South Dakota on the Rosebud Reservation, Red Bird forcibly raped Four Horns. That same day, Red Bird was arraigned in tribal court and pled not guilty to the rape charge. The Rosebud Tribal Public Defender appeared and represented Red Bird at the arraignment and, as of May 29, 2001, remains his counsel on the charge.

On November 28, 2000, Weir and Her Many Horses sought to interview Red Bird concerning his alleged rape of Four Horns. The officers contacted Red Bird while he was parked in his vehicle near a school in Spring Creek. Weir asked if Red Bird would agree to be interviewed about the alleged sexual assault of Four Horns. Red Bird said that he would only agree to be interviewed at his house, that he would "make one statement and one statement only" and that Weir "would not get any more out of him". Red Bird also told Weir that "his lawyer had told him not to make a statement but he had nothing to hide".

Thereafter, Red Bird traveled alone to his house in St. Francis, followed by Weir and Her Many Horses in the former's car. At the house, Red Bird was informed of his *Miranda* rights from an advice of rights form and after reading the waiver portion of it out loud himself, signed the form and agreed to be interviewed. Red Bird was then questioned about the same rape allegation that gave rise to the tribal charge and made incriminatory statements concerning the same. During the course of the interview, Red Bird agreed to provide buccal swabs for the purpose of DNA testing and executed a written authorization form evidencing his consent to this procedure. After swabbings were taken from his mouth at the Rosebud Indian Health Services Hospital, Red Bird left in his vehicle, accompanied only by his wife.

At the time of the November 28th interview, Her Many Horses knew that Red Bird had been arrested tribally for a rape offense, that he had been arraigned by a tribal judge and that the Tribal Public Defender was representing him. Weir, however, does not believe that he was apprised of this information before the interview. Neither Her Many Horses nor Weir, however, ever sought or obtained permission from the Public Defender to interview Red Bird or to take buccal swabs from him prior to November 28th.

On April 18, 2001, a federal indictment was filed alleging that Red Bird had committed several acts of forcible rape against Four Horns. The following day, April 19th, Red Bird was arrested by Weir on the indictment in Spring Creek and taken into federal custody.

## IV.

Red Bird claims that his inculpatory statements to Weir and Her Many Horses were obtained in violation of his Sixth Amendment right to counsel and that because of this, evidence derived from these statements are a poisonous "fruit" that must be suppressed under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and its progeny.

## V.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." The essence of this right is the opportunity for a defendant to consult with an attorney and to have him/her investigate the case and prepare a defense for trial. *Powell v. Alabama*, 287 U.S. 45, 58, 71, 53 S.Ct. 55, 77 L.Ed. 158 (1932). In *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the Supreme Court held that a defendant's Sixth Amendment rights were violated when federal agents deliberately solicited incriminatory state-

ments from him after he had been indicted and in the absence of his counsel. 377 U.S. at 206, 84 S.Ct. 1199. The Court, relying on *Massiah,* later held that, under the Sixth Amendment, "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Michigan v. Jackson* 475 U.S. 625, 636, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); *see also, Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) ("The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State ... and is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a State agent."). *Massiah* and *Jackson* thus make clear that the Sixth Amendment right to counsel attaches against the government at the time of a defendant's federal or state court arraignment. The issue here is whether this right attached when Red Bird was arraigned in tribal court on the rape charge.

## VI.

At the outset, there can be little doubt that Weir and Her Many Horses were investigating and sought to interrogate Red Bird on the *same* rape offense as he was already charged with and pled not guilty to in tribal court. *Texas v. Cobb,* —— U.S. ——, ——, 121 S.Ct. 1335, 1343, 149 L.Ed.2d 321 (2001). Under the test enunciated in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), Red Bird's tribal and federal charges do not require proof of any substantive fact that the other does not. *Compare, Cobb,* 121 S.Ct. at 1343–44; *see also, Brown v. Ohio,* 432 U.S. 161, 164–68, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (joy-

riding and auto theft constitute the "same offense" because "it is clearly not the case that each requires proof of a fact which the other does not"). Inasmuch as the underlying facts, which form the basis for both sets of charges, are identical, Red Bird's Sixth Amendment right to counsel would have attached with respect to the federal charges at the same time that it did on the tribal charge—— if his tribal arraignment created such a right. The paramount question therefore is whether the right was triggered at the time of Red Bird's tribal court arraignment, as he argues, or when he was indicted and federal criminal proceedings were formally initiated against him, as the government maintains.

## VII.

The plain language of the Sixth Amendment prohibits the government from infringing upon a defendant's right to counsel "in *all* criminal prosecutions". (emphasis added). The framer's use of the word "all" is intended to include federal, state *and* tribal prosecutions. The right to counsel guaranteed by this Amendment attaches "at ... the initiation of adversary judicial criminal proceedings—— whether by way of formal charge, preliminary hearing, indictment, information *or arraignment." United States v. Gouveia,* 467 U.S. 180, 188, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984) (*quoting Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (plurality opinion)) (emphasis added); *see also, Brewer v. Williams,* 430 U.S. 387, 401, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Massiah,* 377 U.S. at 204–06, 84 S.Ct. 1199.

In the instant case, Weir and Her Many Horses questioned Red Bird *after* he had appeared with and was represented by counsel at his tribal court arraignment and entered a not guilty plea to the rape charge. In this Court's view, questioning

by the officers under these circumstances violated Red Bird's Sixth Amendment right to counsel.

## VIII.

Contrary to the position espoused in *United States v. Doherty,* 126 F.3d 769, 782–83 (6th Cir.1997), *cert. denied,* 524 U.S. 917, 118 S.Ct. 2299, 141 L.Ed.2d 159 (1998),[1] Rosebud Tribal Court proceedings are "adversarial" as that term was intended to be used in *Gouveia.* Indeed, the Rosebud Tribe plainly "solidified" its decision to become Red Bird's legal opponent when it charged him, by written complaint, with the offense of rape, had him appear in tribal court with counsel to answer the charge and, after being advised of his rights, required that he enter a plea to the same. *See and compare Moran v. Burbine,* 475 U.S. 412, 431–32, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).

The Rosebud Tribe, unlike the Hannahville Tribe in *Doherty,* treats its version of an arraignment as an adversary proceeding. If such a proceeding was nonadversarial, why would the Rosebud Tribe provide its indigent members with representation through a tribally funded public defender who is a licensed practicing attorney? Although the Rosebud Tribal Constitution does not explicitly require that a tribal court appoint counsel to represent indigent tribal members if they lack the means to retain one, *see* Rosebud Const. amend. XI, art. X, § 2 (1966)[2], the Tribe, by virtue of its public defender program, has decided to provide such members with legal representation in criminal cases, at tribal expense, if they are unable to afford the same. The decision to do so is a strong indication that the Rosebud Tribe is not one that has eschewed the prosecutorial and adversarial model of criminal justice. To say that Red Bird's tribal arraignment was a nonadversarial proceeding trivializes tribal criminal jurisprudence, ignores reality and creates bad precedent. More importantly, to hold that the Sixth Amendment does not constrain the behavior of officers in this instance invites flagrant federal abuse of Indian criminal defendants and, in particular, those from the Rosebud Reservation.

## IX.

The issue of whether the Sixth Amendment right to counsel attached at a defendant's tribal court arraignment was recently addressed in *United States v. Swift Hawk,* 125 F.Supp.2d 384 (D.S.D.2000). In that case, the defendant was charged with tribal charges which were essentially the same as the later filed federal charge, appeared with counsel from the Public Defender's Office, and was arraigned. 125 F.Supp.2d at 386. After the defendant was released on bond, he was interviewed by an F.B.I. agent and tribal investigator at his home. *Id.* Both officers were aware that the defendant had been charged and arraigned in tribal court at the time of the interview. *Id.* The defendant was not advised of his right to have his attorney present, nor was he advised of his *Miranda* rights prior to being questioned. *Id.* at 387. No permission was sought or obtained from the defendant's tribal counsel prior to the interview taking place. *Id.* The defendant had not been indicted in federal court at the time the interview was conducted. *Id.* Officers did, however, interview the defendant on the underlying

---

**1.** The Supreme Court in *Cobb* overruled *Doherty* to the extent that it defined "offense", in the Sixth Amendment context, to encompass "closely related" or "inextricably intertwined" acts. 121 S.Ct. at 1340–41.

**2.** A copy of this Constitutional Amendment is attached hereto.

facts which gave rise to the tribal charges and the statements solicited from him were used by federal authorities to indict him.

The defendant in *Swift Hawk* asserted that the Sixth Amendment required the suppression of his statements to officers because the same had been obtained after his right to counsel had been activated and without the presence of his tribal counsel. The *Swift Hawk* court found that the tribal and federal charges were virtually identical and that the government and the Rosebud Tribe were cooperating in the investigation and charging of the defendant (i.e., the two sovereigns were working "in tandem" in connection with the federal and tribal charges). *Id.* at 387–88. The court observed initially that "it is simply not fair play to go around the attorney, even when the represented party agrees to talk without the presence of his attorney." *Id.* at 386–87. The court then noted that the Rosebud Tribal Constitution grants tribal members the right to assistance of counsel and that the Tribe provides for representation for indigent members at tribal expense through the Public Defender's Office. *Id.* at 387. The court went on to hold that the *Massiah* exclusionary rule was triggered by a tribal constitutional right to counsel and by the fact that the defendant had actually been arraigned in an adversarial tribal court proceeding in which he was represented by counsel. *Id.* at 388–89. In doing so, the court emphasized that "federal agents are indeed constrained by the Sixth Amendment, that the Sixth Amendment attaches at the initiation of adversary proceedings, and that an uncounseled confession (deal-

ing with basically the same offense conduct) after the adversarial tribal court arraignment and appointment of counsel must be suppressed." *Id.* at 389.

The facts in the case at hand are virtually "on all fours" with those found in *Swift Hawk.* The only difference between the two cases is that Red Bird was advised of his *Miranda* warnings and waived them prior to being interviewed. This distinction, as *Jackson* makes clear, is of no legal significance. In *Jackson,* the defendants' statements to law enforcement authorities were suppressed under the Sixth Amendment even though they were first advised of their *Miranda* rights and agreed to proceed without counsel being present. 475 U.S. at 628, 106 S.Ct. 1404. Despite their *Miranda* advisements and waivers, the Supreme Court concluded that both the defendants' confessions should be suppressed under the Sixth Amendment.[3] *Id.* at 629–36, 106 S.Ct. 1404.

The analysis of the court in *Swift Hawk* applies with equal force here, at least on its face, and compels suppression of Red Bird's statements to Weir and Her Many Horses and all evidence, including buccal swabs and DNA test results, derived therefrom. Although it can be argued that the statements in *Swift Hawk* regarding the Sixth Amendment issue are no more than dicta, this Court finds that the *Swift Hawk* court's discussion of the issue to be persuasive and dispositive of Red Bird's right to counsel contention. The Court accordingly declines to brush aside the *Swift Hawk* pronouncements as non-binding "dicta".

---

**3.** Three of the Justices in the *Cobb* majority questioned the underlying theory of *Jackson* and the wisdom of its holding. 121 S.Ct. at 1344–45 (Kennedy, Scalia and Thomas, J.J. concurring). The *Cobb* court, however, did not abrogate the rule announced in *Jackson* but did appear to undermine its holding by significantly diminishing the Sixth Amendment protections the case provides. Even so, *Cobb* does not change the *Jackson* rule insofar as this case is concerned because of the identity of the offenses and factual proofs involved.

## X.

Whether or not the doctrine of selective incorporation makes provisions of the Bill of Rights applicable to Indian tribes has never been squarely addressed and is an issue that need not be decided here. There can be no question though that the Sixth Amendment restricts the actions of an F.B.I. agent. Indeed, a line of authority growing out of *Talton v. Mayes*, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896), while exempting Indian tribes from constitutional provisions addressed specifically to state or federal governments, does not relieve state and federal governments of their obligations to individual Indians under these provisions. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 n. 7, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978); *see also, Duro v. Reina*, 495 U.S. 676, 692, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990) ("Indians like other citizens are embraced within our nation's great solicitude that its citizens be protected . . . from unwarranted intrusions on their personal liberty." (citation and internal quotations omitted)).

## XI.

Moreover, the Indian Civil Rights Act (ICRA), discussed at length in *Doherty, see* 126 F.3d at 778–81, has little, if any, relevancy to the instant case. The question of constitutional interpretation now before this Court is *independent* of any statutory construction. As the court in *Doherty* acknowledges, *see id.* at 783, when a defendant's right to counsel has attached under the Sixth Amendment, no statute can change, much less eviscerate this fact.

## XII.

The *Doherty* court's citation to and reliance on extradition hearing cases, *see id.* at 782, is misplaced. These cases hold that such hearings are not adversarial proceedings that trigger the Sixth Amendment. Red Bird, however, was arraigned at an adversarial tribal proceeding before being questioned by Weir and Her Many Horses— which clearly activated the protections guaranteed by the Sixth Amendment.

## XIII.

For all of these reasons, this Court finds that Red Bird was interviewed in violation of his Sixth Amendment right to counsel and any statements given by him in response to questioning from Weir and Her Many Horses must be suppressed. Nevertheless, the Court finds that Red Bird's statements were not the product of coercion or otherwise involuntary,[4] *compare Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), and therefore are admissible at trial *for impeachment purposes* under *Oregon v. Hass*, 420 U.S. 714, 720–24, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) and *Harris v. New York*, 401 U.S. 222, 223–26, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *see also, Michigan v. Harvey*, 494 U.S. 344, 348–54, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990) (overturning a state court ruling that because the defendant's statement after arraignment and appointment of counsel was taken "in violation of [his] Sixth Amendment right to counsel" it could not be used for impeachment purposes).[5]

---

4. This finding is based primarily on credibility grounds—quite simply, the Court believed Weir's rendition of what took place on November 28th over Red Bird's version of the events that day.

5. It should be noted that because the November 28th interview was not tape recorded, the use of Red Bird's statements as impeachment is subject to the rule in *United States v. Azure*, CR. 99–30077, Order (D.S.D. Oct. 19, 1999). Consequently, the government will not be allowed to question Red Bird about his inculpatory statements "in the absence of a cautionary instruction and explanation by the [District] Court to the jury." *Id.* at 2.

## XIV.

Because Red Bird's statements were illegally obtained, the buccal swabs and DNA findings are potentially excludable as "fruits of the poisonous tree". The fact that Red Bird consented to the swabbing during the course of the interview did not purge the taint of the original illegality and cannot save the evidence from exclusion. The inevitable discovery exception to the exclusionary rule does, however, provide the government with a gateway for admitting the challenged evidence.

Although a somewhat close question, this Court is satisfied that such evidence would have been inevitably discovered by lawful means without reference to the Sixth Amendment violation. *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (applying the exception where the poisonous tree was a confession obtained in violation of the defendant's right to counsel and rejecting the defendant's argument that the reasons for such an exception are less compelling when the violation is a Sixth Amendment rather than a Fourth Amendment one); *see also, United States v. Reinholz,* 245 F.3d 765, 779 (8th Cir.2001). The government routinely makes application to the Court for search warrants to obtain bodily fluids of rape suspects. In light of the tribal charge and the information known to law enforcement authorities before the November 28th interview, the Court is confident that the government would have requested, and ultimately been issued, a search warrant authorizing the taking of blood or tissue specimens from Red Bird for the purpose of confirming or dispelling, through comparative DNA analysis, the rape allegations. *See United States v. Dickson,* 64 F.3d 409, 410–11 (8th Cir. 1995), .*cert. denied,* 516 U.S. 1064, 116 S.Ct. 747, 133 L.Ed.2d 695 (1996). This being the case, the buccal swab/DNA evidence is admissible at trial. *Id.*

## XV.

Based on the foregoing and in accordance with 28 U.S.C. § 636(b)(1), this Court concludes that Red Bird's statements were unlawfully obtained in violation of his Sixth Amendment rights and cannot be used by the government at trial, except for impeachment purposes in the event he testifies. The Court further concludes that the buccal swab/DNA evidence obtained from Red Bird is the "fruit of a poisonous tree" and subject to the exclusionary rule but may be admitted into evidence at trial under the inevitable discovery exception to the rule. Accordingly, the Court

RECOMMENDS that Red Bird's Motion to Suppress Statements and Evidence, Docket No. 18, be GRANTED in part and DENIED in part.

### ATTACHMENT

### AMENDMENT IX

(May 2, 1966)

ARTICLE VI, Section 1. Any enrolled member of the Rosebud Sioux Tribe, at least twenty-one (21) years of age, who has resided for at least ninety (90) days immediately prior to the election day in the community in which he anticipates to vote, is qualified to vote.

### AMENDMENT X

(May 2, 1966)

ARTICLE VI, Section 2. Repealed.

### AMENDMENT XI

(May 2, 1966)

ARTICLE X, Section 1. All members of the Tribe and all Indians on the Reservation shall enjoy without hindrance freedom of religion, speech, press, assembly, conscience and association.

ARTICLE X, Section 2. Any Indian on the Reservation accused of any offense shall have the right to a speedy and public trial and to be informed of the nature and cause of the accusation, and to be confronted with witnesses against him. Any Indian accused of any offense shall have the right to assistance of counsel and to demand trial by jury. Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

ARTICLE X, Section 3. No person shall be subject for the same offense to be twice put in jeopardy; nor be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty, or property, without due process of law; nor be denied equal protection of law.

## AMENDMENT XII

(May 2, 1966)

ARTICLE I, Section 1. The President shall manage and administer the affairs of the Tribe, including the supervision of Tribal employees, subject to the resolutions, ordinances and instructions of the Tribal Council. The President shall preside at all meetings of the Tribal Council. He shall vote only in case of a tie.

## AMENDMENT XIII

(May 2, 1966)

ARTICLE I, Section 2. The Vice-president shall assist the President when called upon to do so, and, in the absence of the President, he shall preside. When so presiding, he shall have all the rights, privileges, duties, as well as the responsibilities, of the President. The Vice-president shall not have a vote except in case of a tie when acting as President under Section 1 of this Article.

## AMENDMENT XIV

(September 4, 1973)

ARTICLE VI, Section 1. Any enrolled member of the Rosebud Sioux Tribe, at least eighteen (18) years of age, who has resided for at least thirty (30) days immediately prior to the election day in the district in which he anticipates to vote, is qualified to vote.

## AMENDMENT XV

(December 29, 1977)

ARTICLE II, Section 1(c). All persons of one-fourth (¼) or more Rosebud Sioux Indian blood born after April 1, 1935 to a member of the Tribe, regardless of the residence of the parent.

## AMENDMENT XVI

(September 23, 1985)

ARTICLE II, Section 1(c). All persons of one-fourth (¼) or more Sioux Indian blood born after April 1, 1935 to a member of the Tribe, regardless of the residence of the parent.

ARTICLE II, Section 2. The Tribal Council shall have the power to promulgate ordinances covering future membership and the adoption of new members.

## AMENDMENT XVII

(September 23, 1985)

ARTICLE III, Section 2. The President and Vice-president of the Tribe, shall be elected at large for a term of four years. All other members of the Council shall be elected for terms of four years. All elections shall be by secret ballot. Each community of the Reservation, as follows, shall be entitled to representation on the Tribal Council as herein provided:

Antelope, Black Pipe, Bull Creek, Butte Creek, Corn Creek, Grass Mountain, He

Dog, Horse Creek, Ideal, Milk's Camp, Okreek, Parmelee, Ring Thunder, Rosebud, St. Francis, Soldier Creek, Spring Creek, Swift Bear, Two Strike, Upper Cut Meat.

ARTICLE III, Section 3. The Tribal Council shall have the authority to make changes in the foregoing list according to future community needs.

ARTICLE III, Section 5. Any member of the Tribe at least twenty-five (25) years of age, who has not been found guilty by the Council of misconduct in Tribal affairs shall be qualified to seek and hold membership on the Tribal Council, provided that a candidate for President or Vice-president of the Tribe must have been living on the Reservation for at least one year preceding the date of the Primary election, and a candidate for Community Representative must have been living in the Community of his candidacy for at least one year next preceding the date of the Primary election.