**GEORGIA LEIGH WETSIT,**
Petitioner–Appellant,

v.

**Hon. A.T. STAFNE; Emmit Buckles, Chief Prosecutor, Fort Peck Tribes,** Respondents–Appellees.

No. 94–35255.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 1994.

Decided Jan. 10, 1995.

Timothy J. Cavan, Cavan, Smith & Cavan, Billings, MT, for petitioner-appellant.

Reid P. Chambers, Sonosky, Chambers, Sachse & Enderson, Washington, DC, for respondents-appellees.

Before: NOONAN, O'SCANNLAIN and LEAVY, Circuit Judges.

NOONAN, Circuit Judge:

Georgia Leigh Wetsit appeals the decision of the federal district court denying her petition for habeas corpus brought against the chief judge and chief prosecutor of the Fort Peck Tribes. The case presents a question of tribal jurisdiction over major crimes committed by a member of the tribe, a question that has hitherto not been resolved by a federal court. We affirm the judgment of the district court.

## FACTS

Wetsit is a member of the Fort Peck Tribes. Early on Christmas morning 1992 she stabbed to death her common law husband Donald Whitright, also a member of the tribe. The killing occurred in Wolf Point Mountain within the boundaries of the Fort Peck Indian Reservation. On January 22, 1993, she was indicted in federal district court for the crime of voluntary manslaughter under the Major Crimes Act, 18 U.S.C. § 1153. She was acquitted by a federal jury. She was then charged with manslaughter for the same killing by the authorities of her tribe. Her motion before the tribal court to dismiss the charge was denied. On October 21, 1993, in a jury trial lasting no more than a few hours, she was convicted of the crime, sentenced to one year of incarceration, fined $2,500, and ordered to participate in mental health treatment and a domestic abuse program. She did not appeal her conviction. She had been represented by counsel in the federal district court, but was unrepresented by counsel at any stage of the tribal proceedings.

Wetsit then brought this action seeking habeas corpus under the Indian Civil Rights Act, 25 U.S.C. § 1303. She alleged that the federal courts have exclusive jurisdiction of manslaughter as one of the crimes enumerated in the Major Crimes Act, therefore the tribal court lacked jurisdiction. The tribe

moved to dismiss the petition contending that the tribal court possessed jurisdiction and also that Wetsit had failed to exhaust her tribal remedies by not appealing her conviction to the tribal appellate court. The district court held that out of comity the action should be dismissed because of Wetsit's failure to exhaust her remedies.

Upon the district court's issuance of a certificate of probable cause to appeal the dismissal of her petition, Wetsit filed the instant appeal.

### ANALYSIS

■ *Jurisdiction.* The case is all but decided by *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978), in which Justice Stewart, writing for a unanimous court, declared: "It is undisputed that Indian tribes have power to enforce their criminal laws against tribe members.... Their right of internal self-government includes the right to prescribe laws applicable to tribe members and to enforce those laws by criminal sanctions." *Id.* at 322, 98 S.Ct. at 1085. Quoting a leading treatise on the subject and preserving the emphasis in the original, he stated: "The powers of Indian tribes are, in general, *'inherent powers of a limited sovereignty which has never been extinguished'.*" *Id.,* quoting F. Cohen, *Handbook of Federal Indian Law,* 122 (1945). The reason that *Wheeler* is not entirely dispositive is that our issue was explicitly left open, *id.* at 325, n. 22, 98 S.Ct. at 1087, n. 22, as the issue before the Court was whether the Double Jeopardy Clause of the Fifth Amendment barred the prosecution of an Indian in a federal district court under the Major Crimes Act after he had previously been convicted in a tribal court of a lesser included offense arising out of the same incident. The Court was not asked to decide whether the Major Crimes Act had deprived the tribal court of jurisdiction to try the offense. But the thrust of the Court in *Wheeler* was unmistakable. It was formally stated that the tribes had not given up their power to prosecute their members for tribal offenses "by virtue of their dependent status." *Id.* at 326, 98 S.Ct. at 1088. The court cited with approval *Talton v. Mayes,* 163

U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896), holding that a tribe might criminally punish a tribe member for murder and did so acting "as an independent sovereign." *Id.* 435 U.S. at 329, 98 S.Ct. at 1089.

■ The reasoning of *Wheeler* was applied and affirmed in *Duro v. Reina,* 495 U.S. 676, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990), which again left our issue explicitly undecided. *Id.* at 680, n. 1, 110 S.Ct. at 2057, n. 1. *Duro* held that an Indian tribe could not exercise criminal jurisdiction over an Indian who was not a member of the tribe. The capital distinction insisted upon by the court was between members in the tribe and all others. The criminal jurisdiction retained by a tribe for members of the tribe was justified "by the voluntary character of tribal membership and the concomitant right of participation in a tribal government, the authority of which rests on consent." *Id.* at 694, 110 S.Ct. at 2064. The continuing vitality of *Talton v. Mayes* was affirmed. *Id.* at 681, n. 2, 110 S.Ct. at 2058, n. 2. Although *Wheeler* had not decided the precise question before the *Duro* court, it was read as implying the answer to the question, *id.* at 685, 110 S.Ct. at 2059–60, as it has implied the answer in our case. A tribal court, which is in compliance with the Indian Civil Rights Act is competent to try a tribal member for a crime also prosecutable under the Major Crimes Act.

That the tribes retain jurisdiction over crimes within the Major Crimes Act is the conclusion already reached by distinguished authorities on the subject. It has been noted for example that "the great majority of tribes have for many years exercised jurisdiction over the crime of theft, which duplicates larceny, a crime rather surprisingly included in the original Major Crimes Act." Canby, *American Indian Law in a Nutshell* 135 (2d ed. 1988). Such a practice was, indeed, necessary because federal prosecution of the crime of theft on reservations was "virtually nonexistent." *Id.* at 106. Without the exercise of this jurisdiction by a tribe many crimes on a reservation would still go unpunished. D. Getches, ed., National American Indian Court Judges Association, *Indian Courts in the Future* 33–35 (1978), quoted in

D. Getches and C. Wilkinson, *Federal Indian Law: Cases and Materials* 403 (2d ed. 1986). Logic also points in the same direction because federal jurisdiction under the Major Crimes Act permits conviction of the lesser offenses included within the crime specified, and to hold that the tribal jurisdiction is thereby preempted would preempt a large part of a tribe's criminal jurisdiction. See F. Cohen, *Handbook of Federal Indian Law* 339–41 (1982 ed.).

■ Jurisdiction over Wetsit's offense existed in the tribal court of the Fort Peck Tribes despite her acquittal under the Major Crimes Act. As Brandeis long ago observed, "responsibility is the great developer." See A.T. Mason, *Brandeis, A Free Man's Life* (1946) 642; cf. 281. Retention of this jurisdiction by the tribes can only increase their responsibility for efficient and fair justice.

■ *Exhaustion of Remedies.* Following the precedent of *Duro* we have examined the question of jurisdiction prior to the question of exhaustion of remedies. In *Duro* the federal district court entertained a habeas petition immediately after the tribal court had denied the petitioner's motion to dismiss. No objection to the petition was made on the ground that the petitioner had not exhausted his tribal remedies. We infer that when a tribal court attempts to exercise criminal jurisdiction over a person not a member of a tribe, no requirement of exhaustion need be enforced. It is different when the petitioner is a member of the tribe. Then, by virtue of her consent to tribal membership, she is bound to follow the procedures of the tribe if they are consistent with the Indian Civil Rights Act. Having failed to do so, she is not entitled to have her petition for habeas relief considered.

Judgment of dismissal is **AFFIRMED.**