**John Gary LYDA, Plaintiff,**

v.

**George TAH–BONE, et al., Defendants.**

No. 97–C–233B.

United States District Court, D. Utah, Central Division.

April 15, 1997.

R. Dennis Ickes, Salt Lake City, UT, for Plaintiff.

ORDER

BENSON, District Judge.

The petitioner, John Gary Lyda, has moved the court to reconsider its dismissal of Lyda's petition for habeas corpus to be released from a Ute Tribal Court judgment of confinement for contempt. The court previously dismissed the petition seeking relief under 25 U.S.C. § 1303 (Indian Civil Rights Act) because Lyda, who had been found in contempt and imprisoned by a Ute Tribal Court, had not exhausted his available remedies in the Ute Tribal courts by appealing his contempt and imprisonment to the Ute Tribal Court of Appeals.

The petitioner who was a party to previous Ute Tribal Court proceedings is not a member of the Ute Tribe but a member of

the Cherokee Tribe. Petitioner asserts this fact relieves him from exhausting available Ute Tribal Court remedies. Petitioner is in error. The original jurisdiction of the Ute Tribal Court was in a civil matter. The Supreme Court in *National Farmers Union Insurance Cos. v. Crow Tribe,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) expressly held that Tribal Courts have jurisdiction in civil matters over non-tribal persons, other Indians or non-Indians. The court said, "As we have often noted, Indian Tribes occupy a unique status under our law. At one time, they exercised virtually unlimited power over their own members as well as those *permitted to join their communities."* The court referred to a history of Indian law that has recognized tribal jurisdiction over civil controversies arising within the particular tribe. Although a federal district court may have some jurisdiction to review the exercise of tribal sovereignty in a civil case. The court said:

> We believe that examination should be conducted in the first instance in the Tribal Court itself. Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge. Moreover the orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed. The risks of the kind of "procedural nightmare" that has allegedly developed in this case will be minimized if the federal court stays its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction and to rectify any errors it may have made. Exhaustion of tribal court remedies, moreover, will encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction, and will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review.

Therefore, the propriety and legality of the exercise of the civil contempt authority of the tribal court must first be determined in the Ute Tribal Court system.

Even if the contempt is considered criminal contempt, see *Hicks v. Feiock,* 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988)(as to the distinction between civil and criminal contempt), after the Supreme Court's decision in *Duro v. Reina,* 495 U.S. 676, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990) (holding that Indian tribes could only exercise criminal jurisdiction over tribal members and not other Indians), Congress enacted an amendment to the Indian Civil Rights Act 25 U.S.C. § 1301, et seq. and amended the definition of tribal self-government in § 1301 to provide for the exercise of criminal jurisdiction "over all Indians." The petitioner fails to note that Congress overrode *Duro* by legislation. See Alex Tallchief Skibine, *Duro v. Reina and the Legislation That Overturned It: A Power Play of Constitutional Dimensions,* 66 So. Cal. L.Rev. 767 (1963). This court is not concerned in this case with a distinction based on the exercise of criminal or civil jurisdiction over a non-Indian. Therefore, the Ute Tribal Court had colorable jurisdiction.

The petitioner cites to a dicta statement *Wetsit v. Stafne,* 44 F.3d 823 (9th Cir.1995) for the proposition that exhaustion of tribal remedies is not required by non-tribal members before seeking habeas corpus relief in federal court under 25 U.S.C. § 1303. The statement of the Ninth Circuit in making such a dicta statement that "we infer" is left out of petitioner's quote which indicates the court has not examined other relevant and applicable law and relied only on the holding in the *Duro* case. See *ante* supra. The *Wetsit* court does not note or observe that Congress had subsequently changed the *Duro* ruling by the amendment to 25 U.S.C. § 1301. *Wetsit's* dicta statement does not refer to the amendment to 25 U.S.C. § 1301 which confers criminal jurisdiction over "all Indians." The opinion does not even mention 25 U.S.C. § 1301. The dicta in *Wetsit* therefore is without merit and incorrect.

■ This court cited to exhaustion requirement decisions in its prior order, includ-

ing *Wetsit,* to show that whenever an Indian tribal court has apparent jurisdiction to proceed, as it does in this case, whether the contempt in this case is civil or criminal, habeas corpus relief under 25 U.S.C. § 1303 first requires exhaustion of tribal remedies. The petitioner's arguments in the motion to reconsider to the contrary are without merit.

The petitioner recites that on April 10, 1997 he served a motion to terminate the contempt or for other relief in the Ute Tribal Court and that the Tribal Court has not responded. The Ute Tribal Court, is a tribunal exercising the sovereignty of the Ute Tribe, and must be given a reasonable time to decide the matter. *Harris v. Champion,* 938 F.2d 1062 (10th Cir.1991)(state court given two years to complete exhaustion before federal habeas jurisdiction is exercised). The suggestion that this court should act on April 11, 1997 when a fax was only sent by petitioner to the Ute Tribal Court on April 10, 1997 is ridiculous and is not appropriate exhaustion action by petitioner.

It is apparent that petitioner has not correctly interpreted the law applicable in this case and has made erroneous assumptions in asking this court to reconsider. Therefore,

**IT IS HEREBY ORDERED** the motion of John Gary Lyda, to reconsider its prior order denying his petition for habeas corpus under 25 U.S.C. § 1303 of the Indian Civil Rights Act, is **DENIED.**