# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2796

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant,　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　District of South Dakota.
Andrew Red Bird,　　　　　　　　 *
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee.　　　　　　*

_____

Submitted:　November 12, 2001

Filed:　April 23, 2002

_____

Before LOKEN, LAY and HEANEY, Circuit Judges.

_____

HEANEY, Circuit Judge.

The United States of America challenges the district court's[1] order granting Andrew Red Bird's motion to suppress a statement obtained in violation of the Sixth Amendment. We affirm.

_____

[1]The Honorable Charles B. Kornmann, United State District Court for the District of South Dakota.

## I. Background

On September 11, 2000, Red Bird was charged by criminal complaint and arraigned on a rape charge in the Rosebud Sioux Tribal Court. He pled not guilty. The tribal court appointed an attorney for him, and he was represented in the arraignment proceedings by a Rosebud Sioux Public Defender, a licensed attorney in the state of South Dakota who is admitted to practice in the United States District Court for the District of South Dakota and the United States Court of Appeals for the Eighth Circuit. The constitution of the Rosebud Sioux Tribe guarantees members the right to an attorney in tribal court, and the tribe will pay for an attorney if a defendant is indigent.

Sometime before November 28, 2000, tribal authorities informed FBI Special Agent D. Joseph Weir of the rape allegedly committed by Red Bird. The crime of rape is subject to federal jurisdiction when it is perpetrated by an Indian in Indian Country. See 18 U.S.C. § 1153 (2000). On November 28, Grace Her Many Horses, a Rosebud Sioux Tribal Investigator, assisted Weir in locating Red Bird so that Weir could interview Red Bird concerning the same rape allegation that was pending in tribal court.[2] The district court found that both Weir and Her Many Horses knew about the tribal rape charge and Red Bird's legal representation, but neither one contacted Red Bird's attorney or received the attorney's permission to conduct the interview.

When Her Many Horses and Weir located Red Bird, he informed them that his lawyer had advised him not to make a statement. He claimed, however, that he had nothing to hide so he would make "one statement and one statement only." Weir and

---

[2]The district court found that "[i]t is undisputed that both the federal government and the tribe, two sovereigns, were cooperating in the investigation and charging of the defendant." United States v. Red Bird, 147 F. Supp. 2d 993, 995 (D.S.D. 2001).

Her Many Horses interviewed Red Bird at his house, but Weir demanded that none of Red Bird's family members be present. Weir read Red Bird his Miranda rights, allowed Red Bird to read the advice of rights form, and Red Bird signed the waiver portion of that form. After the agents interviewed Red Bird, they asked him to submit to buccal swabs for a saliva specimen. Red Bird consented, and a saliva sample was taken at the Rosebud Comprehensive Health Facility. DNA testing of this specimen allowed authorities to identify semen found on the victim's clothing as that of Red Bird.

On April 18, 2001, a federal indictment was filed charging Red Bird with four counts of aggravated sexual abuse. The federal indictment charges the same date, victim, location and rape as the tribal rape charge.

On May 15, 2001, Red Bird filed a motion asking the district court to: (1) suppress his statement made to Weir and Her Many Horses, and (2) suppress the saliva evidence taken following the interview. Red Bird asserted that his statement was taken in violation of the Sixth Amendment, or in the alternative, that his statement was involuntary. He also argued that the saliva sample, which was used to obtain DNA test results, was inadmissible as "fruit of the poisonous tree." A hearing was held before a United States Magistrate Judge[3] on May 29, 2001. The magistrate recommended that Red Bird's motion be granted in part, finding that his statements should be suppressed because the interview violated Red Bird's Sixth Amendment right to counsel. The magistrate also recommended that the motion be denied in part, holding that his statement and consent to provide evidence was voluntary and that the evidence obtained following the statement was admissible under the inevitable discovery exception to the exclusionary rule.

---

[3]The Honorable Mark A. Moreno, United States Magistrate Judge for the District of South Dakota.

-3-

Both the government and Red Bird submitted objections to the magistrate's Report and Recommendation, but the district court adopted it. The court found that the federal and tribal charges were identical, that Weir and tribal authorities were working in tandem, and that Weir knew counsel had been appointed to Red Bird at the time of the rape charge. Upon making these findings, the district court held that Red Bird's Sixth Amendment right to counsel attached when he was arraigned on the rape charges in tribal court and that the subsequent interview violated Red Bird's Sixth Amendment right to counsel. The court, therefore, ordered that Red Bird's statements be suppressed in the federal prosecution. The district court also upheld the magistrate's decision that the buccal swab/DNA evidence was admissible because it inevitably would have been discovered by lawful means.

The government appeals the district court's order suppressing Red Bird's statements.[4]

## II. Discussion

The first issue we must address is whether we may apply Sixth Amendment analysis in this case. We note at the outset that it is common for Indian tribal governments and federal authorities to cooperate in the investigation and prosecution of crimes committed on reservations. The Bill of Rights and the Fourteenth

---

[4]Our court has jurisdiction over this appeal pursuant to 18 U.S.C. § 3731 (2000), which allows the government to appeal a district court's exclusion of evidence in a criminal proceeding before a verdict is issued if the United States attorney certifies that the appeal is not taken for purpose of delay and that the evidence is substantial proof of a fact material in the proceeding. The portion of the interview that the government deems most critical is an alleged admission by Red Bird of having been with the victim but a denial of having had intercourse with her.

The district court's holdings that Red Bird's statement was voluntary and that the DNA evidence is admissible are not at issue in this appeal.

Amendment, however, do not apply directly to tribes. See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 56 (1990). "As separate sovereigns, pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority."[5] Id. The right to an attorney in tribal court is guaranteed by the Indian Civil Rights Act (ICRA), 25 U.S.C. §1302(6) (2001), but only at the expense of the defendant. The Rosebud Sioux Tribal Constitution, however, guarantees the right to be represented by an attorney, and the tribe provides indigent defendants with a licensed attorney from the tribal public defender's office. The Rosebud Sioux, therefore, have a right to an attorney in tribal court that is similar to the Sixth and Fourteenth Amendment rights to an attorney in federal and state proceedings.

Although the Sixth Amendment does not constrain the conduct of tribal officials, it does apply to the conduct of federal officials. "The line of authority . . . exempting Indian tribes from Constitutional provisions addressed specifically to State or Federal Governments . . . does not relieve State and Federal Governments of their obligations to individual Indians under these provisions." Santa Clara Pueblo, 436 U.S. at 56 n. 7.

"Whatever else it may mean, the right to counsel . . . means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" Brewer v. Williams, 430 U.S. 387, 398 (1977) (quoting Kirby v. Illinois, 406 U.S. 682, 689 (1972)). The Sixth Amendment guarantees the accused the right to rely on counsel as a medium between

---

[5]Indian tribes, although limited sovereigns, have retained the right to try and punish individuals who transgress their laws. This right is not derived from the federal government but is inherent in the tribes' sovereignty. See United States v. Wheeler, 435 U.S. 313, 323 (1978); see also Talton v. Mayes, 163 U.S. 376 (1896).

him and the authorities. Maine v. Moulton, 474 U.S. 159, 176 (1985). Any statement about the charged crime that government agents deliberately elicit from a defendant without counsel present after the defendant has been indicted must be suppressed under the Sixth Amendment exclusionary rule. Massiah v. United States, 377 U.S. 201, 207 (1964).

Massiah explains that the period between an indictment and a trial, the period of "'thorough-going investigation and preparation,'" is perhaps the most critical period of the proceedings and a defendant is "'as much entitled to [counsel's aid] during that period as at the trial itself.'" Massiah, 377 U.S. at 205 (quoting Powell v. Alabama, 287 U.S. 45, 57 (1932)). The Supreme Court has consistently affirmed the rule announced in Massiah.

> Indeed, after a formal accusation has been made – and a person who has previously been just a "suspect" has become an "accused" within the meaning of the Sixth Amendment – the constitutional right to the assistance of counsel is of such importance that the police may no longer employ techniques for eliciting information from an uncounseled defendant that might have been entirely proper at an earlier stage of their investigation.

Michigan v. Jackson, 475 U.S. 625, 632 (1986).

The analysis in Massiah applies to the case at hand. At the time that Red Bird was interviewed, he had been indicted and had been appointed an attorney who was licensed to serve him in both tribal and federal court. Tribal authorities informed Agent Weir of the tribal indictment and the possible violation of federal law. Agent Weir then worked in tandem with the tribal criminal investigator to deliberately elicit information from Red Bird, knowing that Red Bird had been indicted in an adversarial proceeding for the same charge and that Red Bird was represented by an attorney on that charge. This is not a case where the federal agent was unaware of the

tribal charge or unaware of the defendant's representation by counsel. Rather, it is a case where two sovereigns worked together to investigate conduct that violates the laws of both.[6]

We find that as a result of the way that tribal and federal authorities cooperated in connection with these charges, Red Bird's indictment in tribal court inherently led to his prosecution in federal court. Considering the close working relationship between tribal and federal authorities in this case, to deny Red Bird the right to counsel after the tribal indictment would deprive him of an attorney at one of the most critical stages of the proceedings against him. Therefore, we hold that Red Bird is entitled to the protections of the Sixth Amendment.

Next, we consider the government's argument that Red Bird's Sixth Amendment right did not attach. The government first asserts that the tribal and federal criminal complaints do not charge the same offense. The Sixth Amendment right to counsel is offense specific. McNeil v. Wisconsin, 501 U.S. 171, 175 (1991). The government maintains that the federal and tribal indictments for the same rape charge two separate offenses because the rape violated the laws of two sovereigns.

---

[6]We note that Indian tribes retain sovereignty of a "unique and limited character." United States v. Wheeler, 435 U.S. at 323 ("Indian tribes still possess those aspects of sovereignty not withdrawn by treaty or statute, or by implication as a necessary result of their dependant status."). The Major Crimes Act requires federal jurisdiction over this offense, see 18 U.S.C. § 1153, and the Supreme Court has not decided whether this jurisdiction is exclusive. Duro v. Reina, 495 U.S. 676, 680 n. 1 (1990) ("It remains an open question whether jurisdiction under § 1153 over crimes committed by Indian tribe members is exclusive of tribal jurisdiction.")(citation omitted); Cf. Wetsit v. Stafne, 44 F.3d 823, 825 (9th Cir. 1995) (holding that tribes have concurrent jurisdiction to punish acts that also constitute an offense under the Major Crimes Act). We are not asked to decide whether the tribal court has jurisdiction over the rape allegedly committed by Red Bird, and we do not decide this issue.

The dual sovereignty exception to double jeopardy provides that when a single act violates the "peace and dignity" of two sovereigns by violating the laws of each sovereign, two offenses have been committed. Heath v. Alabama, 474 U.S. 82, 88 (1985) (citation omitted). We do not believe that it is appropriate to fully rely on double jeopardy analysis here. As stated, the tribal charge in this case initiated the federal investigation and proceedings, and the tribe and the U.S. worked in tandem to investigate the rape. Furthermore, tribal sovereignty is "unique and limited" in character. United States v. Wheeler, 435 U.S. at 323.

To determine whether the tribal and federal complaints charge the same offense, we look to Texas v. Cobb, 532 U.S. 162 (2001). In that case, the Supreme Court held that under the Sixth Amendment "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. at 173 (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)). The district court found, and we agree, that the tribal rape charge has "identical essential elements when compared with the later federal charges filed." United States v. Red Bird, 146 F. Supp. 2d 993, 999 (D.S.D. 2001). Therefore, we hold that pursuant to the test set forth in Texas v. Cobb, the federal and tribal complaints charge the same offense for Sixth Amendment purposes.

The government also asserts that Red Bird's right did not attach because the tribal arraignment was not an adversarial judicial proceeding. The Sixth Amendment right to counsel attaches at the commencement of adversarial proceedings against a defendant. Kirby v. Illinois, 406 U.S. 682, 688 (1972). The government argues that Red Bird's arraignment in the Rosebud Tribal Court did not constitute an adversarial judicial proceeding, thus his Sixth Amendment right did not attach. In making this argument, the government relies on the Sixth Circuit case of United States v. Doherty, in which the court held that federal questioning of a defendant, who had been indicted

in the Hannahville Indian Community Tribal Court in the absence of counsel, did not constitute a violation of the Sixth Amendment. 126 F.3d 769 (6th Cir. 1997). We agree with the district court that the Doherty case is distinguishable from this case in several ways. First, Doherty had made an appearance in tribal court, but unlike Red Bird he did not undergo a full arraignment proceeding.[7] Second, the record in Doherty does not reveal whether Doherty had actually employed an attorney at the time federal investigators approached him, and Doherty had no "tribal right" to an attorney. Third, and most importantly, Doherty relied on the assumption that the proceedings in the Hannahville Tribal Court were non-adversarial in nature.

Unlike many tribes, the Rosebud Sioux Tribe has developed an adversarial criminal justice system. As the district court noted, proceedings in the Rosebud judicial system do not operate as family gatherings and counseling sessions. Cf. Doherty, 126 F.3d at 780 (noting that many tribes have adopted a non-adjudicative system of justice). Rather, they are "'adversary judicial criminal proceedings' as that phrase is used in United States v. Gouevia, 467 U.S. 180, 188 (1984)." Red Bird, 146 F. Supp.2d at 998. The Rosebud Sioux Tribe is unique among tribes in that it provides a licensed attorney to represent indigent defendants in tribal court. Id. at 997. The tribe formally charged Red Bird by criminal complaint, with his attorney present, and he was required to enter a plea to that charge. If convicted, Red Bird could serve a term of imprisonment of up to one year.[8] We agree with the district court that Red Bird's arraignment constituted an adversarial judicial proceeding and that his Sixth Amendment right to counsel attached at that proceeding.

---

[7]The arraignment was continued to allow Doherty to contact an attorney. Doherty, 126 F.3d at 772.

[8]U.S. law prohibits tribal courts from imposing a term of imprisonment in excess of one year and a fine greater than $5000 or both. 25 U.S.C. § 1302(7) (2001).

Finally, the government argues that even if Red Bird had a Sixth Amendment right to counsel at the time of the interview, his statements should not be excluded because Michigan v. Jackson, 475 U.S. 625 (1986), should be limited to cases where a defendant who has asserted his right to counsel is subsequently subjected to custodial interrogation. Jackson, states that "[i]f police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." 475 U.S. 625, 636 (1986). The government cites no authority for the proposition that Jackson applies only to custodial interrogations, and indeed, the application of the Sixth Amendment is not dependant on defendant's custodial status. See, e.g., Massiah, 377 U.S. 201 (applying the Sixth Amendment to non-custodial questioning of defendant by an informant after defendant had been indicted). Rather, the government relies on the concurrence in Texas v. Cobb in which three justices express doubts about the underlying theory in Jackson. See Texas v. Cobb, 532 U.S. at 174 (J. Kennedy, concurring). Until such time as the full Court overrules Michigan v. Jackson, we are bound to apply it. Therefore, we find that Red Bird's waiver of his right to counsel was invalid.

III. Conclusion

For the reasons set forth above, we affirm the decision of the district court to suppress Red Bird's statement.


A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.