UNITED STATES of America,
Plaintiff,

v.

Arthur BOWLSON, D–1, Defendant.

No. 01–80834.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 23, 2003.

Douglas R. Mullkoff, Kessler & Mull-koff, Ann Arbor, MI, Jonathan M. Epstein, Fed. Defender, Detroit, MI, Margaret S. Raben, Gurewitz & Raben, Detroit, MI, for Arthur Bowlson.

Sanford A. Schulman, Detroit, MI, for Robert Moore.

S. Allen Early, III, Detroit, MI, for Amont Jefferson.

Timothy S. Barkovic, St. Clair Shores, MI, for Marco Houston.

Richard M. Lustig, Richard Lustig Assoc., Birmingham, MI, for Sean Lipps.

Sheldon N. Light, Daniel R. Hurley, U.S. Attorney's Office, Detroit, MI, for U.S.

## OPINION AND ORDER [1]

TARNOW, District Judge.

On December 20, 2002, Defendant Arthur Bowlson filed a Motion to Suppress Statements and Other Evidence [84–1] and for an Evidentiary Hearing [84–2]. The Court held an evidentiary hearing on January 16, 2003. Agent William Fleming of the FBI testified on behalf of the government, and Defendant Bowlson testified on his own behalf. After considering the parties' written motions, testimony, and oral arguments, for the reasons stated below, the Court DENIES IN PART and GRANTS IN PART the Motion to Suppress [84–1].

## I. FACTUAL BACKGROUND

Defendant is charged with five bank robberies. The last of the five charged robberies involves the robbery of a National City Bank in St. Clair Shores on September 18, 2001 (Count V, Second Superceding Indictment). Mr. Bowlson was arrested on that same day by the St. Clair Shores Police Department, and state officials subsequently charged him with the September 18th robbery.

Mr. Bowlson was arraigned in state court on September 19, 2001, and counsel, Azhar Sheikh, was appointed for him. Because the federal government wanted to pursue the September 18th robbery as a federal crime, Agent William Fleming of the FBI asked the state officials to drop the state charges. They agreed, and the charges were dismissed on October 10, 2001. Mr. Bowlson contends that neither he nor his attorney was informed of the dismissal at that time. Mr. Bowlson provided an affidavit sworn by Mr. Sheikh that he did not know the state charges were dismissed until the order came in the mail.

1. Law Clerk Amy Harwell provided quality research assistance.

The day after the dismissal of the state case, October 11, 2001, Agent Fleming and a Macomb County detective took Mr. Bowlson into federal custody. There are two statements at issue in this case. Regarding the first statement, the Government contends that Defendant spontaneously incriminated himself as to all five robberies during transportation between the county jail where Mr. Bowlson was being held to the Macomb County FBI Office. Defendant, though, denies making any incriminating statements during the car ride.

Agent Fleming testified that, prior to transporting Defendant to the FBI Office in Macomb County, he gave Defendant his *Miranda* warnings orally and then Defendant volunteered or "blurted out" that he was involved in all five bank robberies. Agent Fleming testified that he told Mr. Bowlson they could talk about it once they arrived at the FBI Office. Defendant, on the other hand, testified that he did not receive *Miranda* warnings prior to, nor did he say anything incriminating during, the car trip to the FBI Office. Instead, he testified that, during the car ride, Agent Fleming told him what the FBI knew already about Mr. Bowlson's involvement and offered to recommend a lighter sentence in exchange for Mr. Bowlson's cooperation. Mr. Bowlson testified that he answered a few questions, but he did not say anything incriminating until the second statement.

Regarding the second statement, both parties agree that the incriminating statement occurred. The argument is over whether Mr. Bowlson received and waived his *Miranda* warnings prior to the statement or if the rights were given and waived only after the interrogation and statement took place. The Government contends that Mr. Bowlson was read his *Miranda* rights a second time, waived them, and then incriminated himself in all five robberies. The Government has produced a waiver form signed by Mr. Bowlson acknowledging his rights and waiving them. Mr. Bowlson admits that he signed the form, but he contends that he did not sign the waiver until after the questioning was finished.

## II.  ANALYSIS

### A.  **Defendant's Fifth Amendment Rights**

The first question for the Court is whether it believes Agent Fleming's testimony that Mr. Bowlson received *Miranda* warnings prior to both statements or Mr. Bowlson's testimony that he did not receive any *Miranda* warnings until after the interrogation was completed.

There is a "heavy burden" on the government to show a suspect's waiver of rights was knowing and intelligent. *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ("a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his [rights]."). The Supreme Court has stated, "[s]ince the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders." *Miranda*, 384 U.S. at 475, 86 S.Ct. 1602. Thus, the Government must show waiver of *Miranda* rights by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

After considering the testimony of both Mr. Bowlson and Agent Fleming, the Government has convinced the Court by a preponderance of the evidence that Mr. Bowlson received and waived his *Miranda* rights prior to both statements. In partic-

ular, Government Exhibit # 2, a log kept by Agent Fleming during the arrest and interview of Mr. Bowlson, notes that Mr. Bowlson was orally advised of his rights prior to the car ride to the FBI Office. The log also demonstrates that he was advised of his rights again prior to the interview. In addition, Government's Exhibit # 1, an Advice of Rights and Waiver form, states that a list of rights and waiver provision was reviewed at 9:13 a.m. and signed by Mr. Bowlson at 9:18 a.m. These times are more consistent with Agent Fleming's testimony than Mr. Bowlson's. Thus, the Government has satisfied its burden of showing that Defendant was advised of his rights and waived them prior to interrogation.[2]

The Court notes that, while ruling that the statements are admissible, it is not necessary to decide whether Defendant actually made a statement during the ride from the jail to the FBI office. Defendant is free to argue to the jury that the statement was never made, which would go to the weight the jury gives the statement.

## B. Defendant's Sixth Amendment Right to Counsel

█ The Defendant also contends that his Sixth Amendment rights were violated. In particular, he argues that his constitutional right to an attorney attached at the first formal proceeding regarding the robbery, which in this case was his arraignment in state court. He argues that, subsequent to the arraignment, he should not have been questioned outside the presence of, or without the knowledge of, his attorney on the fifth robbery. He further contends that, in light of the Sixth Amendment violation on the fifth robbery, the rest of the statements that incriminate him in the other four robberies are fruit of the poisonous tree.

Taking the second statement first, the Government responds that Mr. Bowlson had no Sixth Amendment right as to the first four bank robberies because he had not been charged with them at the time, and the right to counsel is offense specific. As for the fifth robbery, though, despite "vigorously" disagreeing that the state charges bind the federal investigators, the Government agrees not to admit references to the fifth robbery in Defendant's second statement in its case-in-chief. They further agree not to use any evidence that was derived directly and solely from that portion of Defendant's statement. Instead, they will use an independent source, such as the cooperative testimony of Defendant's codefendant, Mr. Moore. They also reserve the right to use the statement for impeachment purposes as allowed by *Michigan v. Harvey*, 494 U.S. 344, 353, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990).

---

**2.** The Court notes that neither the interrogation, waiver, nor confession were audio or video taped. Rather than relying on two divergent memories of events, an electronic record would have greatly aided this Court and other courts faced with these disputes. While electronic recording is not a constitutional requirement, as noted above, there is a "heavy burden" on the government to show a suspect's waiver of rights was knowing and intelligent. *Miranda*, 384 U.S. at 475, 86 S.Ct. 1602 ("[t]he State ... has the only means of making available corroborated evidence of warnings given during incommunicado interrogation."). To that end, several jurisdictions in the United States have instituted mandatory taping of confessions, waivers, and interrogations, such as Alaska and Minnesota, *see State v. Scales* 518 N.W.2d 587 (Minn.1994) and *Stephan v. State*, 711 P.2d 1156 (Alaska 1985), while many more tape voluntarily. It harms the prosecution in a close case when the court cannot evaluate an electronic record, especially where the interrogation took place at the FBI's own facilities. The Court strongly recommends that the FBI electronically record future interrogations and confessions so a reviewing court can fully evaluate whether the government has satisfied its burden to demonstrate waiver.

■ The Court finds that the Government's promise to exclude the portions of Mr. Bowlson's second statement that refer to the fifth bank robbery eliminates the need to decide whether or not there was a Sixth Amendment violation and renders the rest of the statement admissible. The Defendant argues that, even without references to the fifth robbery, the entire statement should be excluded as fruit of the poisonous tree. However, he is incorrect.[3] The possible Sixth Amendment violation was confined to the fifth robbery. The Sixth Amendment is offense specific, *McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), and there is no question that the first four robberies are separate offenses from the fifth robbery. *See Texas v. Cobb*, 532 U.S. 162, 173, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001) (expressly overruling lower federal courts that had held the Sixth Amendment rights attached to uncharged offenses that were factually related or similar to a charged offense); *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test . . . is whether each provision requires proof of a fact which the other does not."). Therefore, the Sixth Amendment only attached to the one robbery for which Mr. Bowlson was arraigned and appointed an attorney in state court, the fifth one. Since there was no Sixth Amendment right not to be questioned on the first four robberies, it was not improper for the Government to question Mr. Bowlson about them. The second statement is admitted as to the first four robberies.

■ As for the first statement, the Government argues that the first "spontaneous" confession regarding all five bank robberies should be admitted because the police did not induce the statement with interrogation. The Government contends that a Defendant can choose to confess even after the right to an attorney has attached. Here, since Mr. Bowlson "blurted out" that he committed five bank robberies, just after being reminded of his right to remain silent, the Government argues that the first statement should be admitted in its entirety.

As an initial matter, references to the first four robberies are admitted for the same reasons stated above. However, because the Government did not agree to exclude references to the fifth bank robbery, the Court must evaluate whether using the confession on the fifth robbery would constitute a Sixth Amendment violation.

Regarding the fifth robbery, there is no question that a Sixth Amendment right to counsel attached to the fifth robbery because Defendant was formally arraigned on the charge and requested an attorney. *Michigan v. Jackson*, 475 U.S. 625, 629,

---

**3.** In support of his argument that the entire statement should be excluded as fruit of the poisonous tree, Defendant cites *United States v. Bird*, 287 F.3d 709 (8th Cir.2002). However, *Bird* does not apply to these facts. In *Bird*, the defendant was only charged with one offense. Thus, it was unlike the situation here, where there were multiple offenses at issue, and the right to counsel had only attached to one of the many offenses defendant was questioned about. *See McNeil v. Wisconsin*, 501 U.S. 171, 173, 111 S.Ct. 2204, 115 L.Ed.2d 158 (holding Sixth Amendment did not apply where defendant, who was charged, arraigned, and appointed an attorney in regards to a robbery in West Allis, WI, was questioned about and confessed to crimes in Caledonia, WI). *See also Oregon v. Elstad*, 470 U.S. 298, 309, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (rejecting defendant's "cat out of the bag" theory and holding that, in the Fifth Amendment context, a validly obtained second confession is not "fruit of the poisonous tree" even though the first confession was obtained in violation of *Miranda* ).

106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) ("The arraignment signals 'the initiation of adversary judicial proceedings' and thus the attachment of the Sixth Amendment.") (internal citation omitted).[4] After the Sixth Amendment has attached, "government efforts to elicit information from the accused, including interrogation, represent 'critical stages' at which the Sixth Amendment applies". *Id.* "[T]he constitutional right to the assistance of counsel is of such importance that the police may no longer employ techniques for eliciting information from an uncounseled defendant that might have been entirely proper at an earlier stage of the investigation." *Id.* at 632, 106 S.Ct. 1404.

In *Jackson*, the State maintained that after being advised of their *Miranda* rights, post-arraignment, the defendants validly waived their Sixth Amendment right to counsel. Analogizing to the "prophylactic" rule of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) in the Fifth Amendment context, the Supreme Court rejected the State's waiver argument and held that:

> "[I]f police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid."

*Jackson*, 475 U.S. at 636, 106 S.Ct. 1404. Similarly, in *Edwards*, the Supreme Court stated:

> [W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.

451 U.S. at 484, 101 S.Ct. 1880.

In *Patterson v. Illinois*, the Supreme Court held that a defendant could waive his Sixth Amendment right to counsel by the same means that one waives his *Miranda* rights, rejecting the argument that waiver of Sixth Amendment rights should be more difficult than waiving Fifth Amendment rights. 487 U.S. 285, 297–98, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988). However, the Supreme Court distinguished its holding, leaving earlier Sixth Amendment precedent intact, by stating that:

> We note as a matter of some significance that petitioner had not retained, or accepted by appointment, a lawyer to represent him at the time he was questioned by authorities. Once an accused has a lawyer, *a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect.* See *Maine v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) .... Indeed, the analysis changes markedly once an accused even *requests* the assistance of counsel. See *Jackson*, 475 U.S. at 629–30, 106 S.Ct. 1404.

*Id.* at 290 n. 3, 108 S.Ct. 2389 (emphasis added).

Thus, while it is possible for one to waive the Sixth Amendment right to counsel through waiver of *Miranda* rights, it is beyond dispute that Mr. Bowlson requested an attorney at his arraignment, and Mr. Sheikh was appointed to represent him. Therefore, here, it is not enough that Mr. Bowlson responded to questioning after receiving his *Miranda* warnings. *Jackson*, 475 U.S. at 636, 106 S.Ct. 1404. In-

---

4. The Government does not contest Defendant's testimony or Mr. Sheikh's affidavit that neither knew that the state charges had been dismissed.

stead, under *Jackson*, Defendant's purported waiver of the right to counsel on the fifth robbery is invalid.

In response, the Government contends that, first, as a separate sovereign under double jeopardy principles, the attachment of the Sixth Amendment to the state proceedings does not bind the federal authorities. This assertion is unavailing. Here, the Court is presented with the easy case where the federal and the state authorities investigations were inexorably intertwined. Agent Fleming testified that he knew about the state charges and arraignment of Mr. Bowlson on the fifth robbery. In fact, he called state officials and asked that they drop the state charges in favor of a federal prosecution, which they did. In addition, Agent Fleming testified that he is a member of a task force in Macomb County, consisting of both state and federal officials. The other person consistently involved in the investigation, even after the federal government took over prosecution of the fifth robbery, was a Macomb County detective.

While it is true that state and federal crimes are separate offenses for purposes of double jeopardy, this case is distinguishable from *United States v. Avants*, 278 F.3d 510 (5th Cir.2002) (holding that, under the dual sovereignty doctrine, even though the Sixth Amendment attached to the state crime, it did not attach to the nearly identical federal crime). In *Avants*, there was no indication that the state and federal governments cooperated in either the investigation or the prosecution. The dual nature of the investigation in this case

invites abuse if this Court were to accept that federal authorities are never bound by the state's actions. Here, the federal government was involved in a joint task force consisting of state and federal officials, and the federal officials were aware of the state charges and intervened to have the state charges dropped. *Cf. United States v. Red Bird*, 287 F.3d 709, 715 (8th Cir. 2002) (declining to apply the dual sovereignty doctrine, in part, due to the fact that federal and tribal authorities "worked in tandem" to investigate the crime). The Court is concerned that where the state authorities cannot obtain a conviction after exclusion of evidence due to a constitutional violation, they will forward the case to the federal authorities for prosecution, seeking to circumvent the constitutional right that was violated.[5] While there is no evidence that this circumvention occurred here, a rule permitting such abuses would offend the spirit of the constitutional rights at issue.

The Government's second assertion is that Defendant spontaneously admitted his involvement in the robberies, so there was no interrogation initiated by the police. Agent Fleming testified that after he read Mr. Bowlson his rights, Mr. Bowlson "blurted out" that he had committed all five robberies. Mr. Bowlson, on the other hand, testified that he did not spontaneously confess to anything. Rather, he described a conversation that took place where Agent Fleming outlined the information the Government already knew regarding the bank robberies and explained

---

**5.** While not strictly a Sixth Amendment case, the Defendant points to *United States v. Campbell*, 721 F.2d 578, 579 (6th Cir.1983) where the court suppressed a confession obtained just a few minutes after defendant's arraignment in court, where an attorney was appointed for defendant. The court stated that this behavior "clearly manifest[ed] an indifference to, if not an intentional disregard

for, an accused's Sixth Amendment right to counsel." *Id.* The court said the violation was all the more egregious considering the agents were present at the arraignment. *Id.* Similarly, here, where federal agents were aware that Mr. Bowlson was facing state charges with representation, they disregarded Defendant's Sixth Amendment rights.

that Mr. Bowlson could help himself by cooperating with the federal agents. He also stated that he answered some basic questions, such as if he knew certain people, but he testified that he did not make any incriminating statements.

 The test is whether the officer "deliberately and designedly set out to elicit information" from the defendant. *Brewer v. Williams*, 430 U.S. 387, 399, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). The Court, faced with two contradictory versions, is more convinced by the Defendant's version of events. It seems highly implausible that the mere recitation of *Miranda* rights would cause Defendant to spontaneously confess his involvement in five robberies. It is much more believable that Defendant, in response to statements by Agent Fleming that he could only help if Defendant cooperated, volunteered incriminating information.[6] Having resolved that Agent Fleming likely made these sorts of statements, the Court concludes that the statements were intended to elicit incriminating information from Mr. Bowlson, if not in the car, then at least to lay the groundwork for a later confession at the FBI Office.[7] Therefore, Defendant's statements regarding the fifth robbery are inadmissible.

## V. CONCLUSION

For the reasons stated above, the Motion to Suppress [84–1] as to both statements, is GRANTED IN PART, suppressing any references to the fifth robbery, and DENIED IN PART, admitting references to the rest of the robberies.

---

6. Again, as stated above, whether the Defendant actually made an incriminating statement does not need to be resolved here. The parties can argue about the statement's existence before the jury at trial as to the four other bank robberies.

7. In support of the proposition that a Defendant can confess despite his Sixth Amendment rights, the Government cites several cases that are distinguishable from the case at bar. For example, the Government cites

*United States v. Mills*, 1 F.3d 414 (6th Cir. 1993); however, in *Mills*, the defendant approached the federal agents and asked to speak to them. Similarly, in *United States v. Walls*, 70 F.3d 1323 (D.C.Cir.1995), the defendant initiated the conversation and kept talking despite being warned that he was entitled to have his attorney present. These cases are not applicable here, where the agent initiated the conversation and sought to elicit incriminating responses.