# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1182

_____

United States of America,

        Appellee,

v.

David M. Garlewicz, also known
as Surfer Dave,

        Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
District of Nebraska.

_____

Submitted: June 11, 2007
Filed: August 9, 2007

_____

Before MELLOY, SMITH and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

David Garlewicz pled guilty to one count of conspiracy to distribute and possess with intent to distribute fifty grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1) and 846. Under his plea agreement, Garlewicz reserved the right to appeal the district court's[1] denial of his motion to suppress statements that he made

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

to a law enforcement officer on November 3, 2005–a right he now exercises. Garlewicz also appeals his sentence. We affirm.

## I.  BACKGROUND

On October 20, 2005, police in Kearney, Nebraska, executed a search warrant for Garlewicz's residence, arresting him for methamphetamine drug activity. The next day, Garlewicz was arraigned in Nebraska state court. According to his brief, the Nebraska court did not appoint counsel to him at the time because he planned to hire his own attorney. Later that month, while in custody at the Buffalo County Detention Center, Garlewicz wrote two inmate request forms, known as "kites," to the court requesting reduced bond and appointed counsel. On November 1, an attorney appeared on Garlewicz's behalf for the limited purpose of requesting a lower bond. The Nebraska court then appointed different counsel to Garlewicz, though neither the court nor counsel apparently advised him of the appointment.

On that same day, Garlewicz wrote another kite requesting to meet with Kearney Police Officer Douglas McCarty, Kearney's chief drug investigator. The jail staff advised Officer McCarty of Garlewicz's request. The following day, he wrote another kite with the same request. The jail staff again forwarded the request to Officer McCarty. On November 3, Garlewicz's stepsister met Officer McCarty at his office and relayed the message that Garlewicz wanted to speak with him.

Following up on Garlewicz's three requests, Officer McCarty, alone and unarmed, met with Garlewicz for about an hour on November 3, 2005, at the detention center. He believed that Garlewicz was interested in becoming a confidential informant. Officer McCarty made an audio recording of the meeting using a digital recorder. At the beginning of the meeting, he read a standard statement of *Miranda*[2]

---

[2]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

-2-

rights to Garlewicz from a printed form. Garlewicz signed the form just below the printed statement of rights and additionally signed a "Waiver of Rights" statement at the bottom of the form acknowledging that he read, understood and willingly waived those rights. According to Officer McCarty, Garlewicz was cordial, appeared comfortable, did not appear to be under the influence of alcohol or drugs, and did not appear nervous. The recording confirms Officer McCarty's observations.

During the interview, Officer McCarty warned Garlewicz that he was preparing to send a federal indictment package on Garlewicz to federal prosecutors. He then said, "If you can convince me that . . . it's in my best interest not to go that route, . . . then I'd be more than happy to talk to you." The two then discussed Garlewicz's drug activities and what Garlewicz knew about other individuals in the drug trade. In the context of a discussion about one particular individual, Garlewicz expressed some apprehension about whether Officer McCarty would disclose Garlewicz as a source of information. In response, Officer McCarty said, "Nothing you tell me right now is going any further than right here." Near the end of the interview, Garlewicz commented, "I've been thinking that ever since I decided to talk to you who I could talk to you about." At no point in the interview did Garlewicz attempt to stop the interview or request an attorney.

On March 22, 2006, a federal grand jury indicted Garlewicz for his methamphetamine activities. Garlewicz moved to suppress the November 3, 2005 statements that he made to Officer McCarty, but the district court denied his motion. Garlewicz subsequently pled guilty pursuant to a plea agreement, reserving his right to appeal the denial of his suppression motion. At sentencing, after computing Garlewicz's advisory sentencing range under the United States Sentencing Guidelines as 151 to 188 months' imprisonment and hearing argument for a departure, the district court sentenced Garlewicz to 151 months in prison. Garlewicz appeals the denial of his suppression motion and his sentence.

## II.    DISCUSSION

### A.    Motion to Suppress

Garlewicz argues that at the November 3, 2005 interview with Officer McCarty, he did not effectively waive his Sixth Amendment right to counsel, and that even if he did, Officer McCarty induced him to make incriminating statements involuntarily. "We review the factual findings of a district court under the clear error standard, and review de novo conclusions of law based on those factual findings, such as whether a *Miranda* waiver was valid or a confession was voluntary." *United States v. Sanders*, 341 F.3d 809, 817 (8th Cir. 2003). In addition, we examine the totality of the circumstances to determine the voluntariness of Garlewicz's statements. *See United States v. Hyles*, 479 F.3d 958, 966 (8th Cir. 2007). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *Id*. (quotation omitted).

The parties do not dispute the salient facts surrounding Garlewicz's *Miranda* waiver during his meeting with Officer McCarty on November 3, 2005. Garlewicz initiated the meeting, making three requests on consecutive days to meet with Officer McCarty. At the meeting, Garlewicz appeared comfortable, did not appear to be under the influence of alcohol or drugs and did not appear nervous. Throughout the interview, Garlewicz provided lucid responses to Officer McCarty's questions. Prior to any substantive discussion, Officer McCarty read a standard statement of *Miranda* rights to Garlewicz from a printed form and provided the form to Garlewicz. Officer McCarty explained, "Due to the fact that you called me, I just read these because I want you to understand you don't have to talk to me," to which Garlewicz replied, "I understand." Garlewicz signed below the printed rights and signed the bottom portion of the form under the "Waiver of Rights" statement that read, "I have read the above statement of my rights and I understand each of these rights and, having these rights

in mind, I waive them and willingly make a statement." The form clearly indicates the rights to silence and counsel and warns that "[a]nything you say can and will be used against you in a court of law." On these facts, we hold that Garlewicz waived his Sixth Amendment right to counsel.

> As a general matter . . . an accused who is admonished with the warnings prescribed by this Court in *Miranda* has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one. . . . "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law."

*Patterson v. Illinois*, 487 U.S. 285, 296 (1988) (quoting *Moran v. Burbine*, 475 U.S. 412, 422-23 (1986)).

Garlewicz argues further that his waiver was not "knowing" because he was unaware that the Nebraska court had appointed counsel to him. There is no evidence in the record indicating when the Nebraska court appointed counsel to Garlewicz or when he learned of the appointment. Even if we assume that the court had appointed counsel to him prior to the meeting with Officer McCarty and that he was unaware of the appointment at the time of the meeting, these facts have no bearing on the waiver analysis, which requires in this respect only that Garlewicz knew of his *right* to an attorney. *Cf. Miranda*, 384 U.S. at 444.

Garlewicz also cites *United States v. Red Bird* for the proposition that "[a]ny statement about the charged crime that government agents deliberately elicit from a defendant without counsel present after the defendant has been indicted must be suppressed under the Sixth Amendment exclusionary rule." 287 F.3d 709, 713 (8th

Cir. 2002) (citing *Massiah v. United States*, 377 U.S. 201, 207 (1964)). *Red Bird* is distinguishable. Unlike the present case, in *Red Bird*, as in *Massiah*, the Government initiated the post-arraignment contact with the defendant. *Red Bird*, 287 F.3d at 711-12; *Massiah*, 377 U.S. at 202-03. "[*I*]*f police initiate interrogation* after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that *police-initiated* interrogation is invalid." *Michigan v. Jackson*, 475 U.S. 625, 636 (1986) (emphases added). Where the defendant initiates contact, however, he may validly waive his Sixth Amendment rights, even if he is represented by an attorney. *Patterson*, 487 U.S. at 291; *Michigan v. Harvey*, 494 U.S. 344, 352 (1990) ("[N]othing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney."). Because Garlewicz initiated the November 3, 2005 meeting with Officer McCarty and knowingly, intelligently and voluntarily waived his Sixth Amendment right to counsel, the district court did not err in denying his motion to suppress the statements he made at that meeting.

Notwithstanding his waiver, Garlewicz also argues that his statements were nonetheless involuntary because they were induced by Officer McCarty's promises. Near the start of the interview, Officer McCarty warned Garlewicz that he was putting together a federal indictment package for Garlewicz but then said, "If you can convince me that . . . it's in my best interest not to go that route, . . . then I'd be more than happy to talk to you." Then, near the end of the interview, after Garlewicz sought assurances that their meeting was confidential, Officer McCarty said, "Nothing you tell me right now is going any further than right here." Assuming *arguendo* that Officer McCarty's statements constitute promises, we hold that under the totality of the circumstances, these statements were insufficient to overbear Garlewicz's will and critically impair his capacity for self-determination. *See Hyles*, 479 F.3d at 966. Garlewicz initiated contact with Officer McCarty, making three separate requests to meet with him. During the interview he commented, "I've been thinking that ever

since I decided to talk to you who I could talk to you about." At the time of the interview, Garlewicz was 37 years old, spoke English, did not appear to be under the influence of medication or drugs, had prior experience with the criminal justice system and was calm. Officer McCarty was unarmed, nonviolent and made no threats, and the recording of the interview reveals no signs of duress on Garlewicz's part. *See United States v. Shan Wei Yu*, 484 F.3d 979, 985-86 (8th Cir. 2007) (affirming a district court's denial of a motion to suppress statements made to a federal agent where the evidence showed that the defendant spoke English and was not under the influence of medication or drugs and that the agent used no coercion or inappropriate tactics). In short, the totality of the circumstances shows that Garlewicz's statements to Officer McCarty were the product of his own unimpeded free will. As a result, the district court did not err in finding that Garlewicz's statements were voluntary.

## B.    Sentencing

Garlewicz argues that the district court violated *United States v. Booker*, 543 U.S. 220 (2005), by refusing to consider his request for a sentence below the advisory guidelines range. We disagree. The district court sentenced Garlewicz according to the steps we have laid out since *Booker*: it first determined the appropriate guidelines sentencing range, then examined the propriety of a traditional departure under the guidelines, and finally considered the factors set forth in 18 U.S.C. § 3553(a) to determine whether to vary from the guidelines. *See United States v. Haack*, 403 F.3d 997, 1002-03 (8th Cir. 2005). The district court's decision not to depart is unreviewable. *United States v. Watson*, 480 F.3d 1175, 1177 (8th Cir. 2007); *see also* 18 U.S.C. § 3742(a). To the extent that Garlewicz argues that the district court should have alternatively granted him a downward variance, we review the district court's decision for reasonableness, a standard similar to the abuse of discretion standard. *See United States v. Pepper*, 486 F.3d 408, 411 (2007). We presume that a sentence reflecting a proper application of the sentencing guidelines is reasonable. *Rita v. United States*, --- U.S. ---, 127 S. Ct. 2456, 2462 (2007); *United States v. Cain*, 487

F.3d 1108, 1114 (8th Cir. 2007). Garlewicz has advanced no argument here that the district court improperly applied the guidelines, and he has not otherwise rebutted the presumption of reasonableness. Moreover, our review of the record shows that the district court committed no error in its consideration of the relevant sentencing factors. *See Pepper*, 486 F.3d at 411 ("A sentencing court abuses its discretion if it fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors.") (quotation omitted). We therefore affirm the district court's sentence as reasonable.

## III.   CONCLUSION

We affirm the district court's denial of Garlewicz's motion to suppress and affirm his sentence.

_____