**UNITED STATES of America,**

v.

**Edward COKER.**

**No. CRIM.03–CR–10113–GAO.**

United States District Court,
D. Massachusetts.

Dec. 23, 2003.

James H. Budreau, Boston, MA, for Edward Coker.

William H. Connolly, United States Attorney's Office, Boston, MA, for USA.

*MEMORANDUM AND ORDER*

O'TOOLE, District Judge.

The defendant, Edward Coker, has been charged in a one-count indictment with attempted arson, 18 U.S.C. § 844(i), stemming from an incident in Lynn, Massachusetts, in July 2002. Coker has moved to suppress statements he made to federal agents investigating the alleged arson, arguing that the agents violated his right to counsel guaranteed by the Fifth and Sixth Amendments to the United States Constitution. For the reasons discussed below, Coker's motion to suppress is denied.

## I. *Findings*

An evidentiary hearing on Coker's motion to suppress was held on November 6 and 7, 2003. On the basis of the evidence presented, I make the following findings of fact:

In the early morning hours of July 28, 2002, Lynn, Massachusetts police officers responded to a report of a disturbance at 43 High Rock Street, a three-story apartment building containing six residential units. Upon arrival, the officers observed smoke and fire in the building. The residents were evacuated, and the Lynn fire department extinguished the fire. The fire department began an investigation and recovered from the third floor of the building what appeared to be a "Molotov cocktail"—a broken bottle with a cloth wick protruding from it. Police officers interviewed several witnesses at the scene. Based on statements from witnesses, the police broadcast over the police radio a "be-on-the-lookout" ("BOLO") call for a black male wearing glasses and driving a Nissan sports car.

Shortly after the BOLO call issued, two police officers, responding to an unrelated noise disturbance a short distance from High Rock Street, observed Coker sitting in the driver's seat of a Nissan sports car stopped on Baker Street and determined that Coker fit the description of the BOLO call. For this reason and because his car had a broken headlight and was parked facing the wrong direction of vehicle travel, the police approached Coker and detained him. While Coker was being detained for these purposes, the police arranged for a show-up identification. They arranged for two witnesses to be brought from the apartment building on High Rock Street to Baker Street. Both witnesses identified Coker as the man they had seen causing a disturbance and entering the High Rock Street building just before the fire started. The officers arrested Coker and recovered from his car physical evidence further linking him to the High Rock Street incident.[1]

On July 28, 2002, Coker was booked at the Lynn police department; charged with burning or aiding in burning a dwelling house, Mass. Gen. Laws ch. 266, § 1, and malicious or wanton injuries to personal property, *id.* § 127; ordered to appear at the Lynn district court on July 31, 2002; and released on personal recognizance. A complaint issued on July 29, 2002. Coker was arraigned in the district court on July 31, 2002, appointed an attorney, and again released.

Between Coker's arrest on July 28 and his arraignment on July 31, the Lynn fire department notified federal agents from the Bureau of Alcohol, Tobacco, and Firearms ("BATF") of the High Rock Street incident. BATF Agent Konstantinos Balos began an investigation to determine if the incident involved a federal crime, i.e. attempted arson of a residential apartment building or the use of an incendiary device. On July 30, 2002, Agent Balos took possession of the putative Molotov cocktail the Lynn fire department had recovered from the High Rock Street building and sent it to a BATF laboratory for analysis. On July 31 and August 1, 2002, Agent Balos, together with Lynn police officers, interviewed several witnesses to the alleged arson.

On August 8, 2002, after Coker had been arraigned on the state charges and a law-

---

1. In addition to the motion to suppress that is the subject of this Memorandum and Order, Coker filed motions to suppress the show-up identifications and the evidence recovered at the time of his arrest on Baker Street. At the conclusion of the evidentiary hearing on November 7, 2003, I denied these motions from the bench.

yer had been appointed to represent him, Agent Balos and BATF Agent Mattheu Kelsch approached Coker at his home and asked him to consent to an interview. Coker agreed to be interviewed and, driving his own car, followed the agents to the Lynn fire department where the BATF maintains a satellite office. The agents brought Coker to an interview room and gave him a seat near an unlocked door. They told Coker that he was not under arrest and that he was free to end the interview and leave at any time. The agents read Coker his *Miranda* rights and gave him a written copy of those rights. Coker signed a form acknowledging that he understood his *Miranda* rights, but he refused to sign the portion of the form asking him to waive his rights. Notwithstanding his refusal to sign, I find on the evidence that Coker verbally agreed to waive his rights and that he voluntarily answered the agents' questions.

The interview lasted approximately ninety minutes, during which time Coker confessed to his involvement in the High Rock Street fire. After confessing, Coker became emotional, stated that he wanted to end the interview, and he left the station on his own.

In April 2003, a federal grand jury returned a one-count indictment charging Coker with attempted arson, 18 U.S.C. § 844(i). Except for the joint witness interviews in the week following the incident, there was no evidence that the federal agents worked together with state investigators or otherwise participated in the state case. There was no evidence that the federal investigation was a "sham" intended to give the state prosecutors some undeserved or illegitimate advantage. After the federal investigation became active, the state prosecution became inactive, and the charges were eventually nol prossed.

## II. *Discussion*

In the pending motion, Coker has argued that his statements to the BATF agents should be suppressed and the federal indictment dismissed because the statements were obtained in violation of his right to counsel guaranteed by the Fifth and Sixth Amendments to the United States Constitution. Both Amendments protect an individual's right to the assistance of counsel in certain circumstances. While the protections are similar and perhaps in some instances congruent, the substance and doctrinal basis of each is distinct and requires separate analysis. *See, e.g., McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).

### A. *Fifth Amendment Right to Counsel*

■ The Fifth Amendment guarantees an individual the right to be free from compelled self-incrimination. To protect that right, in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court "established a number of prophylactic rights designed to counteract the 'inherently compelling pressures' of custodial interrogation, including the right to have counsel present." *McNeil,* 501 U.S. at 176, 111 S.Ct. 2204. If, at trial, the government wishes to introduce statements that the defendant made during a custodial interrogation, then it must establish by a preponderance of the evidence that the defendant knowingly, intelligently, and voluntarily waived his rights against self-incrimination and to the assistance of counsel. *See Colorado v. Connelly,* 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Evidence that a defendant waived his Fifth Amendment rights is judged by "the totality of the

circumstances and the facts surrounding the particular case, 'including the background, experience, and conduct of the accused.' " *United States v. Garcia*, 983 F.2d 1160, 1169 (1st Cir.1993) (citations omitted).

The parties here presented conflicting evidence concerning whether Coker validly waived his Fifth Amendment rights. In evidence was a form, titled "Waiver of Right to Remain Silent and of Right to Advice of Counsel," that describes the substance of the Fifth Amendment rights. The form bears Coker's signature below a sentence that states, "I have read this statement of my rights and it has been read to me, and I understand what my rights are." However, Coker refused to sign the portion of the form that indicates, "I hereby voluntarily and intentionally waive my rights and I am willing to make a statement and answer questions." Agent Balos testified that, although Coker refused to sign the waiver portion of the form, he verbally waived his right to counsel and never asked for the assistance of counsel. As noted above in my findings of fact, I have credited that testimony, and I find that Coker knowingly, intelligently, and voluntarily waived his Fifth Amendment rights. I do not find Coker's contrary assertions, made in an affidavit in support of the motion but not in testimony at the hearing subject to cross-examination, to be credible.

In any event, as a separate basis for concluding that Coker's statements were not given in violation of the protection against the use of coerced or uncounselled confessions, I conclude that he made the statements at issue in a non-custodial setting to which the *Miranda* prophylaxis is inapplicable.

An individual's Fifth Amendment rights, as described in *Miranda*, attach "only where there has been such a restriction on a person's freedom as to render him 'in custody.' " In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."

*Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (alteration in original) (citations omitted). The Court must determine "how a reasonable man in the suspect's position would have understood his situation." *Id.* at 323–24, 114 S.Ct. 1526. "Among the factors to consider are 'whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation.' " *United States v. Nishnianidze*, 342 F.3d 6, 13 (1st Cir.2003) (citation omitted).

Here, when Coker met with the BATF agents at the Lynn fire department, he was not under arrest, and there were no restraints on his freedom of movement. Coker voluntarily followed the agents to the fire department. The agents told him that he was free to refuse to answer questions and could leave at any time. During the interview, Coker was seated closest to an unlocked door. When he decided he wanted to end the interview, he was able to walk out of the building unhindered. He was not in custody. The statements he gave could not have been obtained in violation of his Fifth Amendment right to counsel because that right did not attach during the non-custodial interview.

## B. *Sixth Amendment Right to Counsel*

The Sixth Amendment guarantees an individual the right to the assistance of counsel at all critical stages of a criminal prosecution. *Michigan v. Jackson*, 475 U.S. 625, 629–30, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). The right first attaches at the commencement of adversary criminal proceedings, and its purpose is to aid a defendant in his confrontation with the state:

> [G]iven the plain language of the Amendment and its purpose of protecting the unaided layman at critical confrontations with his adversary, our conclusion that the right to counsel attaches at the initiation of adversary judicial criminal proceedings 'is far from a mere formalism.' It is only at that time 'that the government has committed itself to prosecute, and only then that the adverse positions of the government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.'

*United States v. Gouveia*, 467 U.S. 180, 189, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984) (citations omitted). Once the right has attached, the government is prohibited from eliciting statements from a defendant in the absence of a valid waiver of the right. *Jackson*, 475 U.S. at 632, 106 S.Ct. 1404. "[I]f police initiate interrogation after a defendant's assertion, at arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Id.* at 636, 106 S.Ct. 1404.

Here, there is no dispute, that Coker's Sixth Amendment right to counsel had attached as to the state charges at least by July 31, 2002, the date of his arraignment in state court, and that he did not validly waive that right before making the statements in issue. Accordingly, there is no doubt that the statements would not be admissible in the state prosecution.

■ This conclusion does not answer the question presented here: after his Sixth Amendment right had attached on the state arson charge, may federal authorities obtain un-counseled statements from him concerning the alleged arson and use those statements against him at a federal prosecution for a similar offense arising out of the same event? Neither the Supreme Court nor the First Circuit has directly addressed that question. I conclude that Coker's Sixth Amendment right to counsel, as it applies to the pending federal arson charge, was not violated, and his statements may be used against him at the trial of the present indictment.

The Supreme Court has repeatedly held that "[t]he Sixth Amendment right [to counsel] ... is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced ...." *McNeil*, 501 U.S. at 175, 111 S.Ct. 2204. The Court has summarized the policy underlying this rule:

> "The police have an interest ... in investigating new or additional crimes [after an individual is formally charged with one crime.] ... [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities...."

> "Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses."

*Id.* at 175–76, 111 S.Ct. 2204 (alteration in original) (citations omitted).

Following *McNeil,* a number of state and federal courts "read into *McNeil's* offense-specific definition an exception for crimes that are 'factually related' to a charged offense." *Texas v. Cobb,* 532 U.S. 162, 168, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001). In *Cobb,* the Supreme Court considered the offense-specific limitation of the Sixth Amendment in the context of multiple state charges stemming from a single incident. Cobb had been arrested and arraigned on burglary charges. While those charges were pending, the police interrogated him concerning the disappearance of two people from the home he was accused of burglarizing, and he confessed to having murdered them. Cobb sought to suppress his confession, arguing that his Sixth Amendment right to counsel on the burglary charges extended to the un-charged murders because they were factually related to the charged crime.

The Supreme Court rejected Cobb's "factually related" argument. The Court affirmed that the Sixth Amendment is offense-specific and looked to its jurisprudence in the context of the Double Jeopardy Clause of the Fifth Amendment to define the scope of the term "offense" for purpose of the Sixth Amendment right:

> In *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), we explained that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." ... We see no constitutional difference between the meaning of the term "offense" in the contexts of double jeopardy and of the right to counsel. Accordingly, we hold that when the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the *Blockburger* test.

*Id.* at 173, 121 S.Ct. 1335 (citations omitted). The Court went on to find that Cobb's Sixth Amendment right was not violated because burglary and murder, although stemming from the same events, were not the same offense under *Blockburger* and therefore were not the same offense for purposes of the Sixth Amendment. *Id.* at 174, 121 S.Ct. 1335.

Here, the government argues that the Court's reasoning in *Cobb* should be followed to conclude that separate state and federal prosecutions for arson are not prosecutions for the same offense. Once that is concluded, it is a short further step to the ultimate conclusion, compelled by established Sixth Amendment jurisprudence, that the right to counsel applicable to the state offense has no consequence for the distinct federal prosecution. *See United States v. Avants,* 278 F.3d 510 (5th Cir.2002) (applying "separate sovereigns" doctrine and holding that Sixth Amendment had not attached to federal murder charge even though it had attached to state murder charge stemming from same events). I agree that that conclusion, though not reached in *Cobb,* logically follows from it.

The Supreme Court in *Cobb* used broad language when it appropriated Double Jeopardy principles for use in defining the scope of the Sixth Amendment right to counsel: "We see no constitutional difference between the meaning of the term 'offense' in the contexts of double jeopardy and of the right to counsel." 532 U.S. at 173, 121 S.Ct. 1335. It is not a violation of the Double Jeopardy Clause for a defendant to face multiple or successive prosecutions for a single act or transaction

"where the same act or transaction constitutes a violation of two distinct statutory provisions." *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180. Under the separate sovereigns doctrine, it is also not a violation for a defendant to face multiple or successive prosecutions for a single act or transaction when the defendant has violated the laws of separate sovereigns. *E.g. United States v. Lanza*, 260 U.S. 377, 382, 43 S.Ct. 141, 67 L.Ed. 314 (1922) ("[A]n act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each .... The defendants thus committed two different offenses by the same act ....").

When the BATF agents interviewed Coker, his Sixth Amendment right to counsel had not attached as to the federal prosecution, because it had not yet been commenced. That Coker's Sixth Amendment right to counsel had previously attached as to the separate state prosecution is inconsequential. Because the Sixth Amendment protection is offense-specific, and because state and federal arson prosecutions, despite their apparent redundancy, are distinct offenses, the government may use Coker's uncounselled admissions to federal investigators in the federal prosecution, though state authorities would be barred from using them in a state prosecution.

It has long been clear that the Sixth Amendment right to counsel provides only limited protections, and those protections are only triggered once offense-specific adversary proceedings have begun. *E.g., Jackson*, 475 U.S. at 629–32, 106 S.Ct. 1404. Further, the right "does not negate society's interest in the ability of police to talk to witnesses and suspects, even those who have been charged with other offenses." *Cobb*, 532 U.S. at 172, 121 S.Ct. 1335. The Court has said that "the ready ability to obtain uncoerced confessions is not an evil but an unmitigated good .... Admissions of guilt ... 'are more than merely 'desirable'; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law.'" *McNeil*, 501 U.S. at 181, 111 S.Ct. 2204 (citation omitted). In Coker's circumstances, the broader protection against uncounselled statements to the authorities was afforded by the Fifth, not the Sixth, Amendment. *See Cobb*, 532 U.S. at 171, 121 S.Ct. 1335. But I have found, as a matter of fact on the evidence, that Coker intelligently and freely elected to answer the agents' questions. He thus chose to forego the zone of protection offered by the Fifth Amendment.

■ Finally, in his post-hearing memorandum in support of his motion to suppress, Coker has argued for an exception to the separate sovereigns doctrine because "the state investigation and federal investigation were ... so intertwined and inextricably linked."[2] Such an exception is not without some support in the Double Jeopardy case law: "[a] narrow exception to the 'dual sovereignty' doctrine, carved out in *Bartkus v. Illinois*, [359 U.S. 121, 123–24, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959)],

2. Two federal courts have reached results similar to that which Coker advocates here. *See United States v. Bird*, 287 F.3d 709, 715 (8th Cir.2002) (declining to apply dual sovereignty doctrine to Sixth Amendment analysis where "tribal charge in this case initiated the federal investigation and proceedings, and the tribe and the U.S. worked in tandem to investigate the rape"); *United States v. Bowlson*, 240 F.Supp.2d 678, 684 (E.D.Mi.2003) (declining to apply dual sovereignty doctrine to Sixth Amendment analysis "where the federal and state authorities investigations were inexorably intertwined"); *but see Avants*, 278 F.3d at 518 (finding no violation of Sixth Amendment because of dual sovereignty doctrine, but not addressing whether exception exists when state and federal prosecutions are intertwined).

bars a second prosecution where one prosecuting sovereign can be said to be acting as a 'tool' of the other or where the second prosecution amounts to a 'sham and a cover' for the first." *United States v. Aboumoussallem*, 726 F.2d 906, 910 (2d Cir.1984).

The exception comes from the dicta of *Bartkus*, and a number of courts have questioned whether it in fact exists. *E.g. United States v. Brocksmith*, 991 F.2d 1363, 1366 (7th Cir.1993). The First Circuit has recognized the conflict among the courts, but has concluded that the exception does exist:

> We find the gravitational pull of *Bartkus* irresistible. Indeed, we think that the exception is compelled by the bedrock principles of dual sovereignty.... We emphasize that the *Bartkus* exception is narrow. It is limited to situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition in its own proceedings.

*United States v. Guzman*, 85 F.3d 823, 827 (1st Cir.1996).[3]

Here, there is no evidence that the federal authorities dominated or manipulated the state prosecution, that one prosecution was a sham, or that one sovereign was acting as the tool of another. The state authorities began an investigation and interviewed witnesses on the day of the incident. Within a day or two, they notified the BATF of the possibility of a federal crime, and for a time the two sovereigns continued the investigation in parallel. Shortly after the BATF became involved,

however, the state effectively ended its investigation. The federal investigation continued, Coker was indicted by a federal grand jury, and the state charges against him were dropped. These "facts show nothing more than the rendering of routine intergovernmental assistance. Cooperative law enforcement efforts between independent sovereigns are commendable, and, without more, such efforts will not furnish a legally adequate basis for invoking the *Bartkus* exception to the dual sovereign rule." *Id.* at 828.

### III. *Conclusion*

Coker's motion to suppress the statements he made to the BATF agents is DENIED.

It is SO ORDERED.

---

3. In the Sixth Amendment context, the First Circuit also has recognized that the government's misconduct may give rise to constitutional protections where they would not otherwise obtain. *United States v. Bartelho*, 129 F.3d 663, 675 (1st Cir.1997) ("Deliberate chicanery by the government intended to subvert an accused's Sixth Amendment rights ... may give rise to a right to counsel before charges are brought."). Coker has made no claim of "chicanery" or misconduct other than his challenge to the conduct of the interview after he was represented by counsel in the then-pending state prosecution. For the reasons stated in the body of this memorandum, that is not misconduct that would merit the sanction of exclusion of the evidence.